## METCALF v. WILLIAMS.

1. The non-joinder of a defendant in an action *ex contractu* can be taken advantage of only by a plea in abatement.
2. Where a party has been deprived of his right by fraud, accident, or mistake, and has no remedy at law, a court of equity will grant relief.
3. Where a person acts merely as agent of another, and as such signs papers, an express disclosure of his principal's name on their face or in the signature is not essential to protect him from personal liability to a party having full knowledge of the facts.

APPEAL from the Circuit Court of the United States for the Eastern District of Virginia.

The facts are stated in the opinion of the court.

*Mr. C. S. Bundy* and *Mr. W. Willoughby* for the appellants. *Mr. James G. Field, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was a bill in equity filed for setting aside a judgment at law, the rendering and entry of which, as alleged, were a surprise upon the complainant, who was misled by certain proceedings which took place in the court. The complainant was sued personally upon a check drawn by him, as he contends, officially, as the vice-president of the Montpelier Female Humane Association of Orange County, Virginia, an incorporated association of that State, having its office in the city of Alexandria. The check was in these words, to wit: —

"No.    .]                    ALEXANDRIA, VA.; Oct. 2, 1875.

"The First National Bank of Alexandria, Va., pay to the order of A. E. & C. E. Tilton seven thousand $\frac{00}{100}$ dollars.

"E. P. AISTROP, *Sec'y.*              W. G. WILLIAMS, *V. Pres't.*"

The action was brought in the Circuit Court of the United States in the name of Charles E. Tilton, as surviving partner of himself and Alfred E. Tilton [the payees of the check], for the use and benefit of Ferdinand Metcalf. The writ was returnable on the first Monday of July, 1877, declaration filed at that time, and judgment ordered unless defendant should appear and plead to issue at the next rules, namely, first Mon-

day of August, 1877. At the latter day the rule was confirmed, and on the 17th of October, 1877, during the sitting of the court at Richmond, final judgment was moved and entered. The circumstances on which the bill relies for setting aside this judgment are, that the complainant does not owe the money, and made arrangement to have the claim properly litigated ; that in September, 1877, he employed counsel to appear and plead to the action ; that the said counsel, appearing at the clerk's office, was informed by the clerk that it was usual to file the pleas in open court ; that when the court came on in October, and before the judgment was entered, the said counsel called the attention of the judge to the case, and stated that he desired to have entered the plea of *nil debet*, and to call the attention of the court to some preliminary questions which would have to be settled before a trial could be had on the merits : that the judge informed him that he had ordered all cases against persons living in the congressional district in which defendant resided to-be tried in Alexandria ; and that the counsel for plaintiffs were residents of Alexandria and were not then in court, and probably kept away from the knowledge of the fact that this suit under the rule would be tried there : that thereupon the counsel said he would not press the matter further, but would wait until the court commenced its term in Alexandria to have said preliminary questions disposed of ; that he supposed that the formal plea of *nil debet* had been noted by the clerk, it not being usual in the State courts to write out the plea of the general issue, but simply for the clerk to note it on the record. The judgment was afterwards entered without the knowledge of complainant or his counsel. When the court came on at Alexandria, in January following, the complainant's counsel attended for the purpose of trying the cause, and was informed that no plea had been entered on the record at Richmond, and the case was not on the docket for trial. Being taken by surprise, he moved the court to reinstate the cause upon the docket ; but the judge, doubting his authority to do this, refused the motion. By an amendment to the bill, the complainant states that the check sued on was not his check, but the check of the Montpelier Female Humane Association, the corporation before referred to, of which Met-

calf, for whose use the action was brought, was general agent
in the city of New York, and of which the complainant was
vice-president, and E. P. Aistrop was secretary, — which asso-
ciation was doing business as a public corporation, and all per-
sons dealing with it dealt with it as such; that the check was
signed by complainant and by Aistrop in their official charac-
ters, of which Metcalf was fully cognizant, and knew that the
check was not the individual paper of complainant. Letters of
Metcalf, dated in December, 1875, are annexed to the bill, show-
ing that he recognized and treated the check as the check of the
association. Tilton, the nominal plaintiff in the action at law,
and Metcalf, for whose use it was prosecuted, were made defend-
ants to the bill, and filed a demurrer thereto. Upon the argu-
ment, the demurrer was overruled, and thereupon it was agreed
by the counsel of both parties that the court should finally dis-
pose of the case upon the merits, and a decree was rendered
for the complainant on two grounds: first, that he was not
personally bound by the check, — in other words, that it was
not his check, but the check of the corporation; and, secondly,
that Aistrop was not joined in the action. The latter ground
is untenable, because non-joinder of a defendant in an action
*ex contractu* can be taken advantage of only by a plea in abate-
ment. But, upon the other ground, we think that the decree
was correct.

First, however, it is proper to inquire whether sufficient
cause was shown in the bill for setting aside the judgment. It
is manifest that the judgment was a surprise upon complain-
ant. After what passed in the court at Richmond, his counsel
had a right to suppose that the cause would be tried in the
ensuing term at Alexandria. The practice in Virginia as to
entering pleas of general issue on the record sufficiently ac-
counts for the omission to file a formal plea. Had not the term
passed by, the district judge would undoubtedly have set aside
the judgment, and reinstated the cause on the docket for trial.
If, as he supposed, the passage of the term deprived him of
power to do this, it became a proper case for equitable interfer-
ence by bill. When a party has been deprived of his right by
fraud, accident, or mistake, and has no remedy at law, a court
of equity will grant relief. Perhaps, in view of the equitable

control over their own judgments which courts of law have
assumed in modern times, the judgment might have been set
aside, on motion, for the cause set forth in the bill; but if this
were true, the remedy in equity would still be open; and the
fact that the court declined to exercise the power upon motion,
rendered the resort to a bill necessary and proper. Formerly bills
in equity were constantly filed to obtain new trials in actions at
law, a practice which still obtains in Kentucky, and perhaps in
some other jurisdictions; but the firmly settled practice by
which courts of law entertain motions for new trial, and the
dislike of one court unnecessarily to interfere with proceedings
in another, has caused an almost total disuse of that jurisdic-
tion. Courts of equity, however, still entertain bills to set
aside judgments obtained by fraud, accident, or mistake.

As to the merits of the case, we agree with the court below
in holding that, according to the showing of the bill, and as
between the parties, the check sued on was the check of the
Montpelier Female Humane Association, and not the indi-
vidual check of the defendant. There is nothing on its face to
preclude this construction. The bank was requested by two
persons, who sign themselves as officers, one as vice-president
and the other as secretary, to pay a certain sum. Whether
they made this request as officers or as individuals is ambigu-
ous, to say the least. It is evident that an inquiry into the
circumstances of the case might render it certain which was
intended; as, if the bank had an account with a corporation,
of which these persons were the officers designated; if they
had been in the habit of checking on that account in that form,
with the knowledge and consent of the corporation, and the bank
had been in the habit of answering such checks accordingly;
and if all this were known to the party taking the checks, —
it would be a construction contrary to truth to hold them to be
personal checks of the individuals, and not the checks of the
corporation. The bill states as facts, that the check in ques-
tion was the check of the association; that the defendant and
Aistrop acted as officers only in drawing the check; and that
Metcalf, for whose use the suit was brought, was the general
agent of the association, and knew and understood the facts,
and treated the checks as the checks of the association. Under

these circumstances it would be unjust, as between these common agents of the same corporation, to hold the complainant and Aistrop personally responsible on the check. Where a person acts merely as agent of another, and signs papers in that capacity, that is, signs them as agent, and the party with whom he deals has full knowledge of his agency and of the principal for whom he acts, an express disclosure of the principal's name on the face of the papers, or in the signature, is not essential to protect the agent from personal responsibility.

It is unnecessary to determine whether the form of the document in this case was sufficient to charge innocent holders of the check with notice of its character. The fact that it bore two official signatures, that of the complainant as vice-president and of Aistrop as secretary, is so unusual on the hypothesis of its being an individual transaction, and points so distinctly to an official origin, that it may very well be doubted whether any holder could claim to be innocently ignorant of its true character. But, in the present case, the party claiming to have the beneficial interest in the check was a fellow-agent of the company on whose account it was drawn, actually knew its origin, and cannot pretend that he took it for anything else than a check of the corporation. The plea that the name of the principal was not disclosed on the face of the paper cannot be made by him, for he knew all about it.

The remarks of Mr. Justice Johnson, in delivering the opinion of this court, in the case of *Mechanics' Bank* v. *Bank of Columbia* (5 Wheat. 326), are apposite to this case. There the cashier of the bank drew a check and signed it with his individual name without any official designation; but the name of the bank was printed as part of the date. The justice said: " The question is whether a certain act, done by the cashier of a bank, was done in his official or individual capacity. Had the draft, signed by Paton, borne no marks of an official character on the face of it, the case would have presented more difficulty. But if marks of an official character not only exist on the face, but predominate, the case is really a very familiar one. Evidence to fix its true character becomes indispensable." Again, in reference to the ambiguity raised on the face of the check as to whether it was personal or official, the justice

said: "It is enough for the purposes of the defendant to establish that there existed on the face of the paper circumstances from which it might reasonably be inferred that it was either one or the other. In that case it became indispensable to re┌    ┐to extrinsic evidence to remove the doubt. The evidence resorted to for this purpose was the most obvious and reasonable possible, viz. that this was the appropriate form of an official check; that it was in fact cut out of the official check-book of the bank, and noted on the margin; that the money was drawn in behalf of and applied to the use of the Mechanics' Bank; and by all the banks, and all the officers of the banks through which it passed, recognized as an official transaction."

In *Brockway* v. *Allen* (17 Wend. (N. Y.) 40), where the makers of a note appended to their signatures the words "Trustees of the Baptist Society," the Supreme Court of New York held that they were entitled to show by proof that there was a corporation called The Trustees of the First Baptist Society of the village of Brockport; that they were its trustees; that the note was given by them in their official capacity; and that the plaintiff, the payee, knew this fact.

In *Kean* v. *Davis* (21 N. J. L. 683), the bill was signed "John Kean, President Elizabeth & Somerville R. R. Co." The Court of Errors and Appeals of New Jersey, in an elaborate opinion by Chief Justice Green, decided that parol proof was admissible to show that the bill was the bill of the company, and not of the defendant individually; and held that, although where a written instrument is not ambiguous or uncertain on its face, parol proof cannot be resorted to to show what was the real intention of the parties; yet, that in cases of ambiguity on the face of the instrument, as in that case, it might be introduced to explain which of two doubtful constructions was the intent of the parties.

The ordinary rule undoubtedly is, that if a person merely adds to the signature of his name the word "agent," "trustee," "treasurer," &c., without disclosing his principal, he is personally bound. The appendix is regarded as a mere *descriptio personæ*. It does not of itself make third persons chargeable with notice of any representative relation of the signer. But if he be

in fact a mere agent, trustee, or officer of some principal, and is in the habit of expressing, in that way, his representative character in his dealings with a particular party, who recognizes him in that character, it would be contrary to justice and truth to construe the documents thus made and used as his personal obligations, contrary to the intent of the parties.

It is hardly necessary to review the long catena of decisions on this subject. They are very numerous, and somewhat conflicting, but we do not think that there is any preponderating authority which prevents us from giving to the instrument in question that construction and effect which was given to it by the parties themselves.

*Decree affirmed.*