## FALK *v.* MOEBS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MICHIGAN.

No. 243. Argued April 20, 1888. — Decided May 14, 1888.

A promissory note which reads: "Four months after date we promise to pay to the order of George Moebs, Sec. & Treas., ten hundred sixty-one & $\frac{24}{100}$ dollars, at Merchants' & Manufacturers' National Bank, value received," signed: "Peninsular Cigar Co., Geo. Moebs, Sec. & Treas.," and indorsed: "Geo. Moebs, Sec. & Treas.," is a note drawn by, payable to, and indorsed by the corporation, and without ambiguity in the indorsement; and evidence is not admissible to show that it was the intention of the indorser in making the indorsement to bind himself personally.

THE court stated the case as follows:

The plaintiffs in error, Gustav Falk and Arnold Falk, who are citizens of the State of New York, brought suit in the Circuit Court of the United States for the Eastern District of Michigan against the defendant in error, George Moebs, upon nine certain promissory notes made by the Peninsular Cigar Company of Detroit, upon which they sought to charge Moebs personally as indorser. All of the notes were in form like the following, differing only as to amounts and the time of payment:

"$1061.24. DETROIT, MICH., *Aug. 4th*, 1880.
"Four (4) months after date we promise to pay to the order of Geo. Moebs, Sec. & Treas., ten hundred sixty-one & $\frac{24}{100}$ dollars, at Merchants' & Manufacturers' National Bank, value received.

"PENINSULAR CIGAR CO.,
"GEO. MOEBS, *Sec. & Treas.*
"Indorsed : 'Geo. Moebs, Sec. & Treas.' "

The first count of plaintiffs' declaration was special, and alleged in substance that on July 6, 1880, defendant was the secretary and treasurer of a body corporate known as the

Peninsular Cigar Company, then engaged in the business of manufacturing, buying and selling cigars and tobacco in the city of Detroit; that plaintiffs were then doing business as tobacco merchants in New York City; that the defendant, as secretary and treasurer of said Peninsular Cigar Company, applied to plaintiffs for the purchase of certain merchandise, and offered in payment therefor the notes of said Peninsular Cigar Company, and it was then agreed between the plaintiffs and defendant that plaintiffs were thereafter to sell and deliver the merchandise so applied for, and any other goods which defendant, in behalf of said company, might thereafter apply for, and that in payment therefor, the defendant should execute and deliver to the plaintiffs the notes of, the said Peninsular Cigar Company, payable to the order of the said defendant, and by him personally indorsed to said plaintiffs; that said defendant thereafter ordered from the plaintiffs certain merchandise of the value of $7449, and in accordance with said agreement and in payment for said merchandise, the defendant, upon the several dates indicated and specified in the several promissory notes heretofore mentioned, and with the intent and design of binding, charging, and obligating himself as an indorser upon said notes with the liability of an indorser as defined by the law merchant, made, executed, and delivered to the plaintiffs said nine promissory notes.

To this special count were added the common counts in assumpsit, with a notice thereunder written that the plaintiffs would, under the money counts, give in evidence nine certain promissory notes, copies of which were set out, and in which notice it was stated that said notes would constitute the sole bill of particulars of the plaintiffs' demand.

To the special count in the declaration the defendant demurred, and to the common counts he pleaded the general issue. The demurrer to the special count was sustained, and the plaintiffs at the next term of said court brought the cause on for trial upon the issue framed upon the common counts in the declaration. Upon the trial, which was had before said court and a jury, the plaintiffs offered in evidence the notes referred to, and also the deposition of Arnold Falk, one of

said plaintiffs, which it was claimed tended to show that it was the intention of the defendant to bind himself personally in making the said indorsement upon said notes; but this evidence was excluded on the ground that it was not evidence of the personal liability of the defendant. Upon the ruling of the court excluding this evidence error is alleged.

*Mr. Carlos E. Warner* for plaintiffs in error. *Mr. Levi T. Griffin* signed the brief which was filed for same.

I. The indorsement does not, in law, import a corporate obligation, but, upon the contrary, imports an individual obligation of Moebs, the indorser. *Carpenter* v. *Farnsworth,* 106 Mass. 561; *Slawson* v. *Loring,* 5 Allen, 340; *S. C.* 81 Am. Dec. 750; *Chadsey* v. *McCreery,* 27 Illinois, 253; *Robinson* v. *Kanawha Valley Bank,* 44 Ohio St. 441; *Tucker Manufacturing Co.* v. *Fairbanks,* 98 Mass. 101; *Moss* v. *Livingston,* 4 Comstock (N. Y.), 208; *Toledo Agricultural Works* v. *Heisser,* 51 Missouri, 128; *Hitchcock* v. *Buchanan,* 105 U. S. 416.

II. If we be not sustained in the foregoing contention, then we submit that the written evidence leading up to the indorsement and showing the intention of the parties in respect to it, and explaining the sense in which they regarded it, was admissible, and that the court therefore erred in excluding the notes and the accompanying testimony.

We do not understand, as between the immediate parties to this contract, that any different rule applies from that which applies to the construction of any other contract. It seems to us in any event, that the court cannot say absolutely as matter of law, that the indorsement in question imports absolutely the indorsement of the corporation. It does not in terms refer to the corporation. The notes were not made payable to the corporation. The utmost that can be claimed for the indorsement is, that it fails to show absolutely whether it was intended to bind the corporation or the individual; in other words, that the indorsement was ambiguous, and if ambiguous, there can be no question but that written evidence leading to and contemporaneous with it, may be resorted to for the purpose of giving proper construction to that indorsement.

As between immediate parties, a contemporaneous writing. or a subsequent written agreement, may control the effect of a bill, subject to the same conditions that would be requisite in the case of an ordinary contract. *Brown* v. *Langley*, 4 Mann. & Gr. 466; *Salmon* v. *Webb*, 3 H. L. Cas. 510; *Maillard* v. *Page*, 5 L. R. Ex. 312; *Davis* v. *Brown*, 94 U. S. 423; *Wade* v *Wade*, 36 Texas, 529; *Detroit* v. *Robinson*, 38 Michigan, 108; *Singer Manufacturing Co.* v. *Haines*, 36 Michigan, 385; *Lee* v. *Dick*, 10 Pet. 482; *Richmond, Fredricksburg &c. Railroad* v. *Snead*, 19 Grattan, 354; *Smith* v. *Alexander*, 31 Missouri, 193; *Mechanics Bank* v. *Bank of Columbia*, 5 Wheat. 336; *McClellan* v. *Reynolds*, 49 Missouri, 312; *Shuetze* v. *Bailey*, 40 Missouri, 69; *Musser* v. *Johnson*, 42 Missouri, 74; *S. C.* 97 Am. Dec. 316; *Pratt* v. *Beaupre*, 13 Minnesota, 187: *Kean* v. *Davis*, 1 Zabriskie (21 N. J. Law), 683; *S. C.* 47 Am. Dec. 182; *Hood* v. *Hallenbeck*, 7 Hun (N. Y.), 362: *Martin* v. *Cole*, 104 U. S. 30; *Brawley* v. *United States*, 96 U. S. 168, 173; *Baldwin* v. *Bank of Newbury*, 1 Wall. 234.

We submit: (1) That the notes themselves *prima facie* imported a personal and individual liability of the defendant, and that they should have been received in evidence; (2) That in any event, evidence should have been received showing the facts and circumstances under which said notes were executed and delivered by Moebs and received by the plaintiffs, and to whom the credit was actually given upon the indorsement, and that the court erred in excluding such testimony, and in directing a verdict for the defendant.

*Mr. Elliott G. Stevenson* for defendant in error. *Mr. Don M. Dickinson* was with him on the brief.

MR. JUSTICE LAMAR, after stating the case as above reported, delivered the opinion of the court.

Error is not assigned in regard to the judgment of the court sustaining the demurrer to the special count of plaintiffs' declaration in the original assignment of errors annexed to and accompanying the writ of error. It is, however, assigned for error in the brief filed in this court by plaintiffs in error

that such judgment is erroneous, and oral argument has been addressed to us on that point.

For the purposes of this decision we do not deem it necessary to review *seriatim* all the errors assigned. In our opinion the first question to be considered is: Does the indorsement on the notes involved in this case, *in terms*, purport to be that of the Peninsular Cigar Company, or does it purport to be the personal indorsement of Moebs? In other words, can it be clearly ascertained from these instruments themselves who is, in law, the indorser of them? Is the indorsement plain and clear, or is it ambiguous?

It is contended on behalf of the plaintiffs in error that the indorsement, *in terms*, is that of Moebs personally; or, at most, that it is ambiguous and may be construed to be either that of the Peninsular Cigar Company, or the personal indorsement of Moebs. They, therefore, contend that the correspondence leading up to the making of these notes (and which is embraced in the deposition of Arnold Falk, before mentioned) should be considered and read with the notes and the indorsement upon them, not so much for the purpose of varying the terms of the contract embraced in the notes, as for the purpose of elucidating that contract, and for the purpose of showing who was in fact the indorser; — not for the purpose of showing what is the true construction of the language of the contracting party, but who *is* the contracting party. On the other hand, it is insisted with equal earnestness by the defendant in error, that the indorsement is unambiguous, and is in plain terms that of the Peninsular Cigar Company, and is not the personal indorsement of Moebs. He, therefore, contends that the evidence contained in the said deposition of Arnold Falk was rightfully rejected; and that to have admitted it as legal evidence would have been in effect to allow a contract in writing to be changed and modified, in an action at law, by extrinsic evidence, contrary to the rule of law which forbids such change or modification.

Upon this question it may be said that the authorities are not entirely harmonious. Indeed, there is much conflict among them. We do not find it essential, or even useful,

to discuss minutely every authority cited by the respective parties to this controversy, some of which are believed to have little relevancy to the subject under consideration. A discussion of a few of the leading ones which are believed to embody all the principles involved in this case, and to control it, will perhaps be sufficient.

*Hitchcock* v. *Buchanan*, 105 U. S. 416, is a case much in point on this subject. Indeed, it was considered by the learned District Judge below (who, nevertheless, disapproved of the ruling therein and dissented from the opinion of the court below) as practically controlling this case adversely to the plaintiffs in error. In that case a bill of exchange, as follows:

"$5477.13.        OFFICE OF BELLEVILLE NAIL MILL CO.,
                          Belleville, Ills., Dec. 15th, 1875.

"Four months after date, pay to the order of John Stevens, Jr., cashier, fifty-four hundred and seventy-seven $\frac{13}{100}$ dollars, value received, and charge same to account of Belleville Nail Mill Co.                    " WM. C. BUCHANAN, *Pres't.*

                                    " JAMES C. WAUGH, *Sec'y.*

"To J. H. Pieper, Treas., Belleville, Illinois."

was held to be the bill of the company and not that of the individual signers; and it was also held that a declaration thereon against the latter as drawers, setting forth the instrument, and alleging it to be their bill of exchange, was bad on demurrer.

In *Carpenter* v. *Farnsworth*, 106 Mass. 561, a check drawn on the Boston National Bank, a copy of which is as follows:

"$19.20.        BOSTON NATIONAL BANK,
                          Boston, September 9, 1869.

" ÆTNA MILLS.        "Pay to L. W. Chamberlain or J. E. Carpenter or order nineteen $\frac{20}{100}$ dollars.
                                " I. D. FARNSWORTH, *Treasurer.*"

was held to be the check of the Ætna Mills, and therefore binding upon the corporation, and not the treasurer, Farnsworth, personally.

In *Sayre* v. *Nichols*, 7 California, 535, a draft, of which the following is a copy :

"$3000. No. 2123.

"ADAMS & Co.'s EXPRESS AND BANKING HOUSE,
        Mormon Island, Feb. 21, 1855. }

"Pay to A. G. Sayre, or order, three thousand dollars, value received, and charge same to account of this office.

"C. P. NICHOLS, *Agts.*
"per G. W. COREY,

"To Messrs. Adams & Co., Sacramento.
"Indorsed: 'A. G. Sayre, G. W. C.'"

was held to be the draft of Adams & Co., and not the personal draft of the persons who signed it as agents in this case.

In *Garton* v. *Union City Bank*, 34 Michigan, 279, it was said: "A promissory note made payable to C. T. Allen, cashier, or order, indicates that it was made to him not as an individual, but as a bank officer, and that it was a contract with the bank; and in a suit upon it by the bank no indorsement by such cashier is necessary to the admission of the note in evidence."

To the same effect see *Mott* v. *Hicks*, 1 Cowen, 513, and cases there cited; *Bank of Genesee* v. *Patchin Bank*, 19 N. Y. 312, and authorities cited in Story on Agency, § 154.

In 1 Parsons on Notes and Bills, 92, it is said: "If the agent sign the note with his own name alone, and there is nothing on the face of the note to show that he was acting as agent, he will be personally liable on the note, and the principal will not be liable. And although it could be proved that the agency was disclosed to the payee when the note was made, and that it was the understanding of all parties that the principal, and not the agent, should be held, this will not generally be sufficient, either to discharge the agent or to render the principal liable *on the note*," citing *Stackpole* v. *Arnold*, 11 Mass. 27. That case was an action against the defendant as maker of three promissory notes. The notes were signed by another person in his own name, and there

was nothing on the face of them to indicate any agency, or that the defendant had any connection with them. At the trial the person who signed the notes testified that they were given for premiums upon policies of insurance procured by him in the office kept by the plaintiff, at the request and for the use of the defendant, on property belonging to him, and that the witness acted merely as the factor of the defendant, and intended to bind him by the premium notes. The judge instructed the jury that, " if they believed the notes to have been made and signed for and in behalf of the defendant, the verdict ought to be for the plaintiff." It was held that the evidence was improperly admitted, and the instruction was erroneous.

The converse of the rule laid down in the last two cases cited would seem to be identical with that contended for on behalf of the defendant in error.

On the other hand, authorities to sustain the view of the case contended for on behalf of the plaintiffs in error are not wanting, either in number or in pertinence.

In *Kean* v. *Davis*, 1 Zabriskie (21 N. J. L.), 683, a bill of exchange of the following purport, addressed to William Thomson, Esq., Somerville, New Jersey, and indorsed — " The Elizabethtown and Somerville Railroad Company, by John Kean, President:"

" $500.00.                              ELIZABETHTOWN, *Sept.*, 1841.

" Six months after date, please pay to the order of the Elizabethtown and Somerville Railroad Company, five hundred dollars, value received, and charge as ordered.

"Your obed't serv't,                    JOHN KEAN,
" *President Elizabethtown and Somerville R. R. Co.*"

was held to be ambiguous on its face, not clearly showing whether John Kean individually or the railroad company was the drawer, and proof was admitted, in the language of the court, "not to aid in the construction of the instrument, but to prove whose instrument it is." To the same effect see *Chadsey* v. *McCreery*, 27 Illinois, 253; *Vater* v. *Lewis*, 36 Indiana, 288; *Hood* v. *Hallenbeck*, 7 Hun (N. Y.), 362.

*Mechanics' Bank* v. *The Bank of Columbia*, 5 Wheat. 326, is also claimed to be an authority in favor of the position taken by the plaintiffs in error. This was an action of assumpsit brought by the bank of Columbia against the Mechanics' Bank of Alexandria on the following check:

"No. 18.     MECHANICS' BANK OF ALEXANDRIA,
              June 25th, 1817.
" *Cashier of the Bank of Columbia,*
 "Pay to the order of P. H. Minor, Esq., ten thousand dollars.
"$10,000.         WM. PATON, Jr."

It was contended by the defendants that the check on its face was the individual check of Paton, and that evidence could not be received to show that it was in fact the check of the bank, and signed by Paton as cashier. On the other hand, the plaintiffs contended that the check upon its face did not purport to be the private check of Paton, but the check of the bank, drawn by him as cashier, and that the presumption was, that it was an official act. The court, however, decided that the check was ambiguous upon its face, that the marks indicating it to be the check of the bank predominated, and that the only ground upon which it could be contended that the check was the private check of Paton was that it had not below his name the initials for *cashier*. It was accordingly held that in such case testimony was admissible to explain the ambiguity and establish who was in fact the drawer of the check. The court say :

"But the fact that this appeared on its face to be a private check is by no means to be conceded. On the contrary, the appearance of the corporate name of the institution on the face of the paper at once leads to the belief that it is a corporate and not an individual transaction, to which must be added the circumstances that the cashier is the drawer and the teller the payee, and the form of ordinary checks deviated from by the substitution of *to order* for *to bearer*. The evidence, therefore, on the face of the bill, predominates in favor of its being

a bank transaction. Applying, then, the plaintiff's own principle to the case, and the restriction as to the production of parol or extrinsic evidence could have been only applicable to himself. But it is enough for the purposes of the defendant to establish that there existed, on the face of the paper, circumstances from which it might reasonably be inferred that it was either one or the other. In that case, it became indispensable to resort to extrinsic evidence to remove the doubt." p. 336.

The reasoning of the court in this last case leads irresistibly to the conclusion that, had the check under consideration been signed by Paton with the word "cashier" appended, there would have been no ambiguity in it, but it would have been clearly and unequivocally the check of the bank. And in this view the case seems to be not necessarily an authority in favor of the plaintiffs in error, but rather an authority against them, and in favor of the defendant in error.

In Daniel on Negotiable Instruments, § 415, it is said : " If a note be payable to an individual, with the mere suffix of his official character, such suffix will be regarded as mere *descriptio personœ*, and the individual is the payee," citing *Chadsey* v. *McCreery*, *Vater* v. *Lewis*, *supra*, and *Buffum* v. *Chadwick*, 8 Mass. 103. Continuing, he says, "In New York a different doctrine prevails," citing *Babcock* v. *Beman*, 1 Kernan (11 N. Y.), 209. But in § 416 the rule laid down would seem to be in favor of the contention of the defendant in error ; for it is there said : " Where a note is payable to a corporation by its corporate name, and is then indorsed by an authorized agent or official, with the suffix of his ministerial position, it will be regarded that he acts for his principal, who is disclosed on the paper as the payee, and who, therefore, is the only person who can transfer the legal title," citing *Northampton Bank* v. *Pepoon*, 11 Mass. 288, and *Elwell* v. *Dodge*, 33 Barb. 336.

Many more authorities are cited and might be dwelt upon almost *ad infinitum*. A discussion of all of them would greatly protract this opinion, and would subserve no beneficial result. In all this vast conflict — we had almost said an-

*archy* — of the authorities bearing on the question under consideration, it is not easy to lay down any general rule on the subject which would be in harmony with all of them. It seems to us, however, that the case of *Hitchcock* v. *Buchanan, supra,* controls the case at bar. Both involve the same principles, and the decision in this, to be consistent with that of the former, must sustain the contention of the defendant in error. Neither do we think that the case of *Mechanics' Bank* v. *The Bank of Columbia, supra,* when considered in the light of the facts upon which it is based, in anywise conflicts with this conclusion.

We conclude, therefore, that the notes involved in this controversy, upon their face, are the notes of the corporation. In the language of the court below, they were "drawn by, payable to, and indorsed by, the corporation." There is no ambiguity in the indorsement, but, on the contrary, such indorsement is, *in terms,* that of the Peninsular Cigar Company.

This being true, it follows that the court below was right in excluding from the jury the evidence offered to explain away and modify the terms of such indorsement. *White* v. *National Bank,* 102 U. S. 658; *Martin* v. *Cole,* 104 U. S. 30: *Metcalf* v. *Williams,* 104 U. S. 93.

Entertaining these views, we find it unnecessary to consider any of the other questions presented and argued by counsel; as what we have said practically disposes of the case adversely to the plaintiffs in error.

The judgment of the court below is accordingly

*Affirmed.*