## PATENT VULCANITE ROOFING CO., Inc., v. TRANSOCEANICA SOCIETA ITALIANA DI NAVIGAZIONE.

Circuit Court of Appeals, Second Circuit.
April 8, 1929.

No. 211.

Bigham, Englar & Jones, of New York City (D. Roger Englar and Arthur W. Clement, both of New York City, of counsel), for appellant.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. ■ This is an action at law, tried before a jury, to recover for cargo damage to a shipment of roofing material assigned at New York to Genoa, Italy. At the end of the case, on motion, a directed verdict was entered for the appellee, because it was held the appellant failed to establish that the steamship San Gennaro, upon which the cargo was shipped, was owned or operated by the appellee. A motion to submit that question to the jury as one of fact was refused. The evidence offered showed that on May 15, 1918, a contract of carriage was entered into for the transportation of these rolls of roofing felt. This contract was made with Peirce Bros., as general agents for the appellee. A bill of lading was issued by the freight traffic manager of Peirce Bros. and offered in evidence, but was excluded and then marked for identification. The freight traffic manager of Peirce Bros. testified that he was authorized to and did sign this bill of lading. Peirce Bros. were the only agents of the appellee in New York.

Under the proofs, the bill of lading should have been admitted in evidence, for it was sufficiently established that Peirce Bros., as such general agents, were authorized to sign bills of lading, and did so as early as 1917, and that their freight traffic manager had done so since 1917, and continued until he left its employ in 1919. On its face, it showed the agreement of carriage was with the appellee, whose name is stamped thereon, and it recites that Peirce Bros. were its general agents. The conditions therein contained show that the appellee was the carrier, and it provided in various paragraphs that the carrier could substitute or transship on any other steamer; it was exempt from loss or damage occasioned by the perils of the sea; a lien was provided on the goods for the freight, and liability was limited to $100 per package. It was not a master's bill of lading, as these terms clearly establish.

■ The answer admits that the appellee was engaged in the steamship business between New York and Italy. There was close interrelation between the firm of Peirce Bros. of Naples, Peirce Bros., Inc., a corporation, of New York, and the appellee. The Naples firm was a partnership, father and son, and after the father's death the son was the sole member of the firm. Appellee was organized in August, 1917. It operated steamers in its own name, with a paid-in capital stock of 50,000,000 lira. Peirce Bros. owned shares of the par value of 15,000,000 lira and all the controlling interest in the Sicula Americana Steamship Company, which also owned a substantial interest in the appellee. Steamers of both Peirce Bros. of Naples and the Sicula Americana Steamship Company were exchanged for stock. The office of Peirce Bros. and that of the appellee were in the same building in Naples, and Peirce Bros. booked freight for the westward voyages of the steamship San Gennaro in 1917 and 1918. The New York Peirce Bros. advertised for freight in New York as general agent of the appellee.

It is claimed, however, that the San Gennaro, built in October, 1917, was subject to requisition by the Italian government. For a period of one year it was exempt, and it is claimed that the San Gennaro was first owned by Peirce Bros. of Naples, and later transferred to the Sicula Americana Steamship Company, and then, before making any voyage, went back to Peirce Bros. However, the arrangement was such that, at the expiration of the one-year period, the vessel was turned over to the Transoceanica Steamship Company. That was the apparent arrangement between Peirce Bros., the Sicula Company, and the appellee. While it is admitted that the San Gennaro was operated by the appellee in 1918, a bill of sale from Peirce Bros. to the appellee was not executed until December 1919.

The proof established that the general agent in New York contracted for the transportation of this shipment on the San Gennaro with appellee, and that it was the carrier. The freight traffic manager testified to the effect that, in the latter part of 1917, the entrance door to Peirce Bros. bore the name of Peirce Bros. as the agent for the Sicula Company, and then the name was changed to the appellee and Peirce Bros., Inc., as agent. No other name appeared on the door. The agent represented to the public that it acted as such agent rather than a principal, signed bills of lading for a prior voyage of the San Gennaro in February, 1918, similar

in form to that issued in the instant case. Where the name Sicula Americana Steamship Company was printed on the bills of lading, the word "Transoceanica" was rubber stamped over the words "Sicula Americana." The masters of the various ships turned copies of such bills of lading over to the appellee.

There was evidence of advertisement from October, 1917, to May, 1919, inserted by the agent, announcing the solicitation of freight by the appellee from New York to Naples and Genoa and other Mediterranean ports. This appellant had issued to it a similar bill of lading for a previous cargo shipment by Peirce Bros. This was sufficient for the appellant, as shipper, to reasonably assume that it was dealing with Peirce Bros., general agents for the appellee, and that the latter was the carrier of the cargo. Hannon v. Siegel-Cooper Co., 167 N. Y. 244, 60 N. E. 597, 52 L. R. A. 429; Ring v. L. I. Real Estate, etc., Co., 93 App. Div. 442, 87 N. Y. S. 682, affirmed 184 N. Y. 553, 76 N. E. 1107.

Moreover, it appears that similar bills of lading for other cargoes were issued by the general agent on behalf of the appellee for three other vessels, in identical form, which it operated, and which were transferred to it for its capital stock. In Strachan Shipping Co. v. Eccles & Co. (C. C. A.) 25 F. (2d) 361, the bill of lading purported to be executed by "the agents of said ship," and was signed "By authority of the owners, Strachan Shipping Co., Agents, W. Macpherson, Agents." And the court said:

"It may be assumed that the freight contracts standing alone would bind appellant as principal. Its signature as agent would not of itself give notice of agency. Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665. But it is unnecessary to disclose the principal's name on the face of contracts not under seal, where the other party thereto has knowledge or notice of the fact of agency. Metcalf v. Williams, supra. The intent of the parties may be shown by extrinsic evidence. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050."

At bar it is shown that the shipping company, for which Peirce Bros. advertised, was the appellee, and it was the only name on its office door for which they were acting as agent.

The Lady Franklin, 8 Wall. 325, 19 L. Ed. 455, and Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998, referred to by appellee, are not applicable, for there the agents exceeded their authority, and it was held that they could not bind the carrier. Here the goods were delivered to the agent, and accepted by it for the carrier. See Gleason v. Seaboard Air Line Co., Supreme Court, January 2, 1929, 49 S. Ct. 161, 73 L. Ed. ——.

The appellant established that the roofing felt, when received on board the vessel, was in good order and condition; that each roll bore a label reading, "Stand on end; stow in a cool place." The rolls were stowed horizontally and in hold No. 3 'tween decks next to the boiler and engine room, separated by an iron bulkhead; some of the rolls rested directly against it. The vessel arrived in Genoa on January 5, 1918. The rolls were discharged on lighters and placed on a dock. Many of them were damaged by the heat, and were stuck together and in bad condition; it was necessary to use planks to loosen them. Photographs taken in June, 1919, showed the rolls stowed in a shed on the dock horizontally, not vertically. Their damaged condition is shown. A surveyor also gave testimony as to the damage. There was sufficient proof on the issue of negligence and damage to require the submission of both questions to the jury. It was error to direct a verdict for the appellee, and the judgment must be reversed.

Judgment reversed.