**LOWENSTEIN v. SALOP et al.**
No. 132.

Circuit Court of Appeals, Second Circuit.
Feb. 1, 1932.

890

Benjamin Bernstein, of New York City (Benjamin Bernstein and Max J. Wolff, both of New York City, of counsel), for defendant-appellant Alexander A. Salop.

Jacob M. Zinaman, of New York City, for complainant-appellee William Lowenstein as trustee in bankruptcy of Meyer Reikes, Inc.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant Manufacturers' Trust Company is a mere stakeholder, and has no interest in this appeal. The trustee in bankruptcy of Meyer Reikes, Inc., sues to recover a transfer made by the bankrupt to the defendant Salop within four months of the filing of the petition in bankruptcy on March 29, 1929, and alleged to have been in violation of section 60b of the Bankruptcy Act (11 USCA § 96 (b). The trial court sustained this cause of action and decreed that the transfer was an unlawful preference and should be turned back. The transferee, Salop, contends that there was no proof that (a) the bankrupt was insolvent at the time of the transfer; (b) that Salop had reasonable cause to believe that the transfer would effect a preference; or (c) that a preference was in fact effected.

The bankrupt had been a corporation engaged in the contracting business, fitting up restaurants and altering buildings. All its stock was owned by Meyer Reikes. It had done business with Salop for some ten years. On February 14, 1929, Salop held its note for $3,000 drawn to his order and indorsed by Reikes individually, which Salop had discounted. This note had become due on January 9, 1929, and remained unpaid. Salop likewise had discounted a promissory note for $3,500, drawn by Papae & Co. to the order of Reikes individually, and indorsed by the latter. This note had become due January 24, 1929, and was held by Salop on February 14, 1929. Salop threatened suit on both notes. In order to avoid suit, Meyer Reikes, Inc., entered into an agreement with Salop under date of February 14, 1929, which recited that Salop was the owner of the $3,000 overdue note of Meyer Reikes, Inc., and also the owner of the $3,500 overdue note of Papae & Co., the proceeds of which, when it was discounted by Salop, were delivered by Meyer Reikes to Meyer Reikes, Inc. The agreement provided that the above notes should be surrendered, and that in consideration of the surrender Meyer Reikes, Inc., assigned to Salop all its equity in certain promissory notes of the Regal Food Shops belonging to it which were at the time held by the Manufacturers' Trust Company as security for a loan. This equity was not merely $7,500, as contended by Salop, but actually $17,000. So Reikes testified (fol. 109), and so the answer of the trust company, which was a mere stakeholder, indicated. The counsel for Salop conceded that the facts in this answer were true.

It appears from the foregoing that Salop acquired equities of the face value of about $17,000 in exchange for the note of Meyer Reikes, Inc., for $3,000, and the note of Papae & Company for $3,500. Each note had been protested for nonpayment.

The trial judge held that Meyer Reikes, Inc., was insolvent at the time the transfer of the equities was made, that Salop had reasonable cause to believe it insolvent and to believe that the enforcement of the transfer would effect a preference. He found that the bankrupt's equity at the time of the trial was $4,464.10 in cash and $12,770.92 in notes, which he ordered the Manufacturers' Trust Company to turn over to the complainant.

The proof justified the finding of the trial court that the bankrupt was insolvent at the time the transfer was made. The assets shown by schedule B-3 were valued at

$118,574.97. They included a balance of $86,899.10 due from Veribest Corporation. That corporation owned an improved piece of real estate on which there were three mortgages for $161,700, $80,750, and $20,000, making altogether $262,450. The company had thirteen vacant apartments out of fifty-three, was operated at a loss, and evidently was without available assets outside of its practically worthless equity in the apartment house. The mortgagee instituted a foreclosure of the third mortgage in March, 1929, and sold the property under decree of foreclosure. Bachrach, who owned the third mortgage, had appraised the property at a value of $300,000 when he made the loan. Bachrach testified at the trial that it was worth $325,000, but the condition of the property would certainly justify a valuation at no more than $300,000 at most. Such a valuation would reduce the worth of the claim against Veribest Corporation from $86,899.10, at which it was carried in the schedules, to $37,550.

After an analysis of the figures furnished by the accountant Karp, appellant's counsel has placed the total valuation of the bankrupt's assets at $238,710 (appellant's brief, at page 32). But this $238,710 included the claim against the Veribest Corporation valued at $86,899.10, whereas the value should not have exceeded $37,550. Thus the value of the assets calculated at $238,710 would be reduced by $49,349.10, and so, would not exceed $189,360.90. According to the same analysis the liabilities were $207,237.84, thus leaving Meyer Reikes, Inc., insolvent by $17,876.94. Even this is on the assumption that bills and notes aggregating $85,-662.77 on which Meyer Reikes, Inc., was secondarily liable, would all be paid. The unsecured creditors were substantially the same on February 14, 1929, as at the time of the filing of the petition in bankruptcy, so that we may say that Meyer Reikes, Inc., was insolvent when the transfer was made. At that time Salop knew that one of the notes of Meyer Reikes, Inc., which he held, had been protested for nonpayment, that he was himself threatening the company with suit, and that Meyer Reikes, when Salop insisted that there should be payment or an exchange of other notes, said to him: "The only thing I have is what the bank holds." These things must have made it plain to Salop that the corporation was in desperate straits. They put him on inquiry and gave him reasonable cause to believe that Meyer Reikes, Inc., was insolvent. In such circumstances, any transfer in payment of his claim against the corporation was recoverable under section 60b of the Bankruptcy Act if it resulted in a preference.

It is clear that the transfer of the equity in payment of the debt of Meyer Reikes, Inc., on its own note for $3,000 payable to Salop was voidable if it effected a preference.

The transfer of the note of Papae & Co. to Meyer Reikes, Inc., stands in a somewhat different category. It is stated in the agreement of February 14, 1929, between Salop and Meyer Reikes, Inc., that the former was the owner and holder of the Papae & Co. note, and that it had been discounted by Reikes, and that the proceeds had been delivered to Meyer Reikes, Inc. This note was drawn by Papae & Co. to the order of Meyer Reikes individually, and indorsed by him in blank. Meyer Reikes, Inc., was not liable upon the note, for it was neither a maker nor an indorser. Even if it were assumed that Reikes originally took it on behalf of his company, of which there is no proof, his indorsement would not bind the latter, for the liability of an undisclosed principal does not apply to negotiable paper. Only parties whose names appear upon a note can be sued thereon. Metcalf v. Williams, 104 U. S. at page 98, 26 L. Ed. 665; Cragin v. Lovell, 109 U. S. 194, 3 S. Ct. 132, 27 L. Ed. 903; First National Bank v. Wallis, 150 N. Y. 455, 44 N. E. 1038; Ranger v. Thalmann, 84 App. Div. 341, 82 N. Y. S. 846, affirmed 178 N. Y. 574, 70 N. E. 1108; Tucker Manufacturing Co. v. Fairbanks, 98 Mass. 101; 1 Williston on Contracts § 278.

The substance of the transaction here was a transfer to Salop of equities of the par value of $17,000 in payment of the bankrupt's note for $3,000 and in exchange for the Papae & Co. note for $3,500 which Salop had held as security for his advance to Reikes. The effect of all this was to pay the debt of the bankrupt to Salop for $3,000 and interest, and to transfer to the bankrupt the $3,500 note of Papae & Co. in return for the bankrupt's equity in the notes of the Regal Food Shops.

The note for $3,500 of Papae & Co. had been protested for nonpayment when the exchange was agreed upon on February 14, 1929, and we do not know what it might realize. Nor do we know what the equities of $17,000 may ultimately yield, though at the date of trial they stood at $4,164.10 in cash and $12,770.92 in uncollected notes at par. It is true that at the time of the trial on March 3, 1931, one of these uncollected notes

of the Regal Food Shops for $489.58 was a day or two overdue, but there had then been paid on the whole series of Regal notes which aggregated $23,053.10 when the assignment to Salop was made, the sum of $10,282.18. The $4,164.10 in cash and the remaining Regal notes amounting to $12,770.92 at the time of the trial were held by the stakeholder for the account of the owner of the equities, and were decreed by the District Court to be turned over to the complainant. In view of the continuous payments upon the notes of the Regal Food Shops prior to the date of trial, it may fairly be said that, when the equities in the notes were transferred to Salop on February 14, 1929, they had a greater value than the face of the $3,500 note of Papae & Co., and the $3,000 note of Meyer Reikes, Inc., held by Salop. If this was not so, Salop should have offered proof to the contrary. The assignment of the equities in the Regal notes to Salop effected an unlawful preference because Meyer Reikes, Inc., was at the time insolvent and the equities were of sufficient value to exceed the face of the note of that company held by Salop and that of the note of Papae & Co. as well.

The transfer of the Papae & Co. note was not in itself a preference, because that note was not an obligation of the bankrupt. The exchange of it for assets of Meyer Reikes, Inc., of much greater value might be a transfer in fraud of the creditors of Meyer Reikes, Inc., but the third count of the bill of complaint, seeking to recover the equities transferred to Salop on the ground that the transfer was to "hinder, delay and defraud" creditors, was dismissed by the trial judge, and the trustee in bankruptcy did not appeal. The recovery sought here is under section 60b of the Bankruptcy Act (11 USCA § 96 (b) to set aside an unlawful preference.

Salop obtained equities from the bankrupt sufficient to pay in full its note for $3,000 and to equal or exceed the face of the note of Papae & Co. as well. Thus he participated in a transaction which involved an illegal preference. In doing this, he made no attempt to apportion between the $3,000 note of Meyer Reikes, Inc., and the $3,500 note of Papae & Co. the equities in the Regal notes. Accordingly, the entire consideration which he received may be regarded as so affected with the illegality of the unlawful preference that the transfer of the equities must be set aside.

■ It is perfectly true that, if Salop had transferred the $3,500 note of Papae & Co. for such a portion of the equities in the Regal notes as did not defraud the creditors of Meyer Reikes, Inc., and had received the remaining portion of the equities in payment of the $3,000 note of the latter, the first transaction would have been unassailable. From this it may be argued that when Salop obtained a transfer of all the equities in exchange for a discharge of his claim of $3,000 against Meyer Reikes, Inc., and for the $3,500 Papae & Co. note, the amount realized from the equities ought to be apportioned in the ratio which the $3,000 note bore to the value of the $3,500 note at the time when the assignment of the equities to Salop was made. If the note of Papae & Co. had been worth its face value and the equities had realized $13,000, such a method of apportionment would give the bankrupt estate $6,000 and Salop $7,000. In other words, in the assumed case, Salop, by invoking an equitable rule of apportionment, would deplete the estate to the net amount of $3,500, and this while engaged in obtaining an unlawful preference through combining the note of Papae & Co. which he owned with a discharge of his claim against Meyer Reikes, Inc., in order to furnish the consideration for the transfer of the equities in the Regal notes. We can discover no sound reason for aiding a person engaged in obtaining an unlawful preference to carry out any part of his plan. The preferential payment and the Papae & Co. note together furnished the consideration for the transfer of the equities. Salop did not apportion the equities between the legal and illegal elements of the consideration in return for which the equities were exchanged. We are not disposed to apply the equitable doctrine of apportionment to enable Salop to obtain a profit. A rescission of the entire transaction seems the only proper course.

A decree should pass allowing the trustee in bankruptcy to recover the equities in the notes of the Regal Food Shops and their proceeds, but directing him to credit to Salop the value of the $3,500 note of Papae & Co. on February 14, 1929, and directing Salop to assign to the trustee all his right, title, and interest in the said note and to deliver the same to the trustee if it is in his possession.

The cause is remanded, with directions to modify the decree accordingly.