## JONES v. FOX FILM CORPORATION.
### No. 7099.

Circuit Court of Appeals, Fifth Circuit.
Jan. 6, 1934.

Mark McMahon, of Fort Worth, Tex., and Charles Reinhard, of Houston, Tex., for appellant.

Hubert W. Smith, of Dallas, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

John T. Jones, residing in the Southern district of Texas, was sued in the Northern district together with Hollywood Theaters Corporation having its home office in the latter district, upon an exhibited written contract made with Fox Film Corporation. The petition sought recovery of a balance as due by both upon the face of the contract, but alleged further facts touching the making of it which it contended would render Jones liable if the face of the contract did not. Hollywood Theaters Corporation admitted the execution of the contract, and made defenses which were not sustained by the evidence, but it has not appealed. Jones asserted his privilege to be sued in his own district, but, as the petition plainly made a case against Hollywood Theaters Corporation, the suit against both on causes of action arising out of one contract had a proper venue in either district. 28 USCA § 113. Though the corporation had failed and had ceased doing business, it was not dissolved. Collier v. Valley Building & Loan Association (Tex. Civ. App.) 43 S.W. (2d) 173. It was still suable at its domicile. There was no error in so holding.

Jones by answer admitted signing the contract for Hollywood Theaters Corporation, but denied that he was personally bound. He set up by amended answer that arbitration was made by the contract a condition precedent to suit, and averred also that the plaintiff had not performed on its part, and that his guaranty if any was within the statute of frauds. The court over objection admitted evidence as to the circumstances at-

tending the making of the contract, construed it as binding Jones individually, and, since full performance by the plaintiff and the amount of the balance due were proven without contradiction, he directed a verdict against both defendants. Jones appeals, and assigns numerous errors. Those relating to the admission of parol evidence touching the contract and to its construction are controlling. The assignments which relate to the court's refusal to give to the jury requested instructions cannot be considered because the charges refused are not set out in the assignments totidem verbis as required by our rule XI. Nor do we find any identification of them in the certified bill of exceptions. There are found elsewhere in the record what appear to be requests signed by counsel for defendants, but they are not in any manner authenticated by the judge. However, if the verdict was properly directed, there could be nothing else to say to the jury.

 The plea of no arbitration was properly disregarded. The contract provides that: "The Exhibitor and Distributor respectively freely and voluntarily agree that as a condition precedent to the commencement of any action or proceeding in any court by either of them to determine, enforce and protect the rights of either party hereunder, each shall submit all claims and controversies arising hereunder for determination to arbitration"—the method of arbitration being set out. As will appear below, the Hollywood Theaters Corporation is the exhibitor and Fox Film Corporation is the distributor; Jones being a guarantor. The quoted provision is no part of his guaranty but is an agreement between the exhibitor and distributor only. Moreover, it is confined to controversies arising under the contract. The controversy which Jones raises is that he is no party to the contract. That controversy manifestly could not be one arising under the contract. Jones could not be called on to arbitrate it by virtue of a contract which he is denying that he ever made. The existence of the contract as to him is not a matter contemplated by the arbitration clause, even if it purported to include the guarantor. Moreover, until long after suit and only in an amended answer did Jones ever suggest arbitration. The unconditional denial of liability is held generally to waive arbitration if otherwise demandable. See cases collected 47 L. R. A. (N. S.) at page 427.

 Coming now to the contract, the problem is one of its construction; the true meaning is to be sought and enforced. It is on a printed form used by the Fox Film Corporation in contracting to furnish photoplays to theaters for exhibition, in which the former is designated as the distributor and the latter as exhibitor, and by whose terms the distributor is to furnish described plays to be shown by the exhibitor at stated minimum admission prices which are to be divided on a percentage basis, with many other unimportant details stipulated. As this form was filled out, it begins, "This agreement dated May 7, 1931, is made between the Distributor and John T. Jones (referred to in this agreement as the Exhibitor) operating the Hollywood Theater located at No. ———, City of Fort Worth, State of Texas," and is signed at the end, "In witness whereof the parties have duly executed these presents. Exhibitor, Hollywood Theaters Corporation, Owner, by John T. Jones, Officer; Fox Film Corporation by J. L. Granger, Vice-President and General Sales Manager." Typewritten into the printed form above these signatures and under the title Additional Terms are these words: "John T. Jones guarantees the Fox Film Corporation total returns on the above mentioned pictures amounting to $10,548.00, payable as follows: 25% of the gross receipts on 7 day pictures to $4,000.00, then 50-50; 25% of the gross receipts on 3 or 4 day pictures to $2,000.00, then 50-50. The owners of the Hollywood Theater guarantee that such percentage will equal $10,548.00, and should there be any deficiency in this amount they will pay the Fox Film Corporation on the 1st day of September, 1931." Below the quoted words are the initials of Jones, "J. T. J." superposed on a rubber stamp provision that payments are to be made at an address in Dallas, Tex. Looking to the final signatures alone one would say that Hollywood Theaters Corporation is alone bound as exhibitor and owner through its officer John T. Jones. The signature is in the usual form by which a corporation and not its officer who acts for it becomes bound. If this were all that the paper disclosed, it must have been held to be the obligation of the company and not of Jones, and that its legal import could not be varied or added to by parol evidence. Falk v. Moebs, 127 U. S. 597, 8 S. Ct. 1319, 32 L. Ed. 266. But the beginning of the paper names Jones, operating the Hollywood Theater, as the party who contracts as exhibitor, and again names him as guaranteeing results, and also seeks to bind the owners of the theater to a similar guaranty, though not naming them. Presumably the parties intended to render the contract operative in all its terms, but it is not apparent how the corporate signature

alone can do this, and the suggestion is strong that Jones, in putting his initials to the guaranty and his name to the whole paper, must have intended to effectuate agreements which expressly relate to him. Without other evidence, that effect should probably be given to the agreement. McCrea v. Bentley (Sup.) 154 N. Y. S. 174. But, in view of the discrepancy and uncertainty thus appearing on the face of the instrument, the judge heard parol evidence of the circumstances and the negotiations. This can be done where the face of the paper leaves it doubtful whose contract it is. Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326, 5 L. Ed. 100; Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Traynham v. Jackson, 15 Tex. 170, 65 Am. Dec. 152. That the problem of determining who is bound by an instrument is one of construction by the court primarily on the face of the instrument, but in case of ambiguity or uncertainty to be assisted by parol evidence, is established by a host of cases collected in 42 L. R. A. (N. S.) at pages 3 and 5.

The parol evidence showed that Jones was vice president of the Hollywood Theaters Corporation, which owned the Hollywood Theater at Fort Worth and operated it through one Burmester as manager. Jones and Burmester went to Dallas to obtain of Fox Film Corporation a contract for pictures, but Fox's representative would not furnish them to Hollywood Theaters Corporation except on the personal guaranty of Jones. Jones himself testifies: "He asked me to make a contract for Hollywood Theaters Corporation and make a personal guaranty to the contract. I told him I was not willing to do it, that I would think it over and give him an answer later." Fox pressed for an answer by telegram. Burmester came to Dallas and offered to sign the contract already prepared in quadruplicate, but Fox's representative would not permit it, saying that Jones must sign. So Burmester took the papers and delivered them to Jones who, after striking out some provisions, initialed and signed them as already stated, and mailed them without comment to Dallas, whence they went to the home office in New York and were executed there for Fox Film Corporation and one copy returned to Jones, after which the pictures were furnished and exhibited and about $7,200 remitted to Dallas from time to time under the contract. Fox's representative testifies he understood Jones to be bound and would not otherwise have had the contract executed by Fox. Jones testifies that he intended to sign only for his corporation, and, in answer to a leading question by his attorney, stated that he put his initials under the guaranty to indicate a cancellation of the rubber stamp provision about payment at Dallas.

With the contract thus explained, we think it comes to this: That the final signature of the corporate name expressly made as owner and exhibitor operated to substitute the corporation as exhibitor and owner in the place of Jones where the agreements of the contract are expressed as those of the exhibitor or of the owner of Hollywood Theater, but that the guaranty of returns to the amount of $10,548 which was expressed as the independent personal obligation of Jones, known to him to be insisted on as a condition precedent to any trade, stands unaltered. He had the contract under advisement for the sole purpose of deciding whether he would make that personal guaranty. By his signing the contract containing it, and returning it without comment to be put into force, Fox might justly understand that he was agreeing both for his corporation and for himself that every term of it which he had not stricken out was to take effect. Here as in McCrea v. Bentley (Sup.) 154 N. Y. S. 174, the signature of the corporation by its officer ought to bind the corporation to agreements applying to it, and the officer to agreements which are expressed as applying to him. This conclusion is strengthened by reference to the initialing under the guaranty, done at the time of signature. We are not impressed by the explanation that the initialing was for the purpose of canceling the stipulation as to payments being due at Dallas. The usual way to cancel a stipulation is to cross it out, as Jones crossed out other stipulations in this paper. Initialing is not understood to have any such effect. Payment at Dallas was at best an immaterial matter, and it appears that the payments under the contract in fact were made at Dallas, so that the stipulation was carried out and not treated as canceled. Initialing papers usually means identification or approval. Initials are a sufficient signature if so intended under the statute of frauds. Salmon Falls Mfg. Co. v. Goddard, 14 How. 446, 14 L. Ed. 493, and see Ohl & Co. v. Smith Iron Works, 288 U. S. at page 176, 53 S. Ct. 340, 77 L. Ed. 681. The just conclusion is that Fox Film Corporation could rely on Jones having assented to be bound personally. Metcalf v. Williams, 104 U. S. at page 99, 26 L. Ed. 665.

Judgment affirmed.