[No. 9913.   Department Two.   May 16, 1912.]

CITIZENS NATIONAL BANK, *Respondent*, v. F. W. ARISS *et al.*, *Appellants.*[1]

BILLS AND NOTES—EXECUTION—DRAFT BY AGENT—ACTIONS—PLEADING—COMPLAINT. Since a draft drawn by an agent as such, disclosing the names of his principals, shows *prima facie* that he did not intend to bind himself personally, a complaint thereon, alleging that he was such agent duly authorized to make the draft, states a cause of action against the principals.

PRINCIPAL AND AGENT—CONTRACT OF EMPLOYMENT—AUTHORITY OF AGENT—POWER TO DRAW BILL OF EXCHANGE—EVIDENCE—SUFFICIENCY. The evidence shows that an agent had authority to draw a bill of exchange in the name of his principals, where it appears that he was employed by commission merchants at a monthly salary to represent them in a certain territory in which they were buying, with authority to make purchases for them on his own inspection, he being directed to make a certain purchase for "spot cash," and not being expected to make advances.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE OF CUSTOM—ADMISSIBILITY—KNOWLEDGE OF CUSTOM. In such a case, evidence of a custom whereby a shipper would draw a draft on the consignee subject to inspection at the point of delivery is inadmissible; since the custom related to buyers and sellers, and since he was authorized to purchase for spot cash; also, because no knowledge of the custom was shown.

[1]Reported in 123 Pac. 593.

BILLS AND NOTES—DRAFTS—DEFENSES—HOLDER IN DUE COURSE.
It is no defense to an action on a draft, drawn by defendant's agent
and discounted by the plaintiff, a bank, that the draft was given for
fruit purchased which was in bad condition, when the agent had
authority to purchase on his own inspection.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE. A new trial for newly
discovered evidence consisting of a letter in the party's possession is
properly denied where no excuse was shown for failing to produce
the letter.

TRIAL—DILIGENCE—PROVINCE OF COURT AND JURY—DIRECTING VER-
DICT. Where the competent evidence is all in writing, and the issues
presented only a construction of the writings, the court should take
the case from the jury.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered May 10, 1911, upon the ver-
dict of a jury rendered in favor of the plaintiff by direction
of the court, in an action upon a draft. Affirmed.

*Hastings & Stedman*, for appellants.

*Raymond J. McMillan* and *Grosscup & Morrow*, for re-
spondent.

ELLIS, J.—Action by the plaintiff, Citizens National Bank
of Los Angeles, California, upon a negotiable draft cashed
by it, reading as follows:

"$1,492.30          Los Angeles, Cal., 7-21, 1910.
          "8892.

"Pay to the order of Citizens Nat. Bank Fourteen Hun-
dred and Ninety-two Dollars *with exchange* value received
and charge the same to account of '
To Pacific Fruit & Produce Co.
No. P. F. E. 3591, Tacoma, Wash.
                    "C. J. Hicks, Agent.
                    "Ariss, Campbell & Gault."

The complaint alleged that the defendants, by their agent,
C. J. Hicks, thereunto duly authorized, made and delivered
the draft; that the drawee refused payment, of which the
defendants had notice, and that they on demand refused and
still refuse to pay to plaintiff the amount of the draft. A

15—68 WASH.

demurrer to the complaint was overruled. The defendants by answer admitted that Hicks drew the draft, denied that he was their agent, and alleged, in substance, as an affirmative defense, that Hicks was engaged in the business of selling Southern California fruits; that he offered to sell to the defendants a car load of lemons, which he represented as free from frost and scale, and as of designated sizes; that, relying upon these representations, the defendants accepted his offer and directed him to ship the fruit to the Pacific Fruit & Produce Company, the drawee of the draft, at Tacoma. The answer further alleged the existence of a custom at Los Angeles, Tacoma, and Seattle, that, when car load lots of citrus fruits were sold, the seller would draw a draft upon the consignee, attach it to the invoice of the shipment, and place it in a bank to be forwarded to and collected from the consignee subject to his inspection of the fruit, the draft being paid by the consignee only if the fruit was accepted as meeting the representations upon which it was sold; that this custom was well known to the parties, and that with the custom in view the defendants directed Hicks to issue the draft in question; that the lemons, upon inspection at Tacoma by the consignee and the defendants, were found not free from frost and scale, not of the specified sizes, nor otherwise as represented, and that they were worthless and unsalable; that the consignee refused to accept them and declined to pay the draft for failure of consideration; and that Hicks had no authority to issue the draft as that of the defendants.

The cause was tried to a jury. At the close of the plaintiff's evidence, the defendants moved for a nonsuit, which was denied. When all of the evidence was in, each party moved for an instructed verdict. The motion of the defendants was denied, that of the plaintiff was granted, and the court gave judgment against the defendants for the amount of the draft. The defendants' motion for a new trial was overruled and they have appealed.

The appellants' first contention is that the demurrer to the complaint should have been sustained because, as they argue, the draft did not on its face purport to be their obligation. There would be force in this contention if Hicks had signed merely "C. J. Hicks, agent," without disclosing the name of his principals, but he also signed the name of his principals. This is not a case of an undisclosed principal which would preclude evidence of an intention to bind him. Notwithstanding the irregularity of the signature of the principals by the agent, the draft was theirs if they intended that it should be. If he was authorized to make the draft as theirs, they were bound by it. In the absence of evidence to the contrary, the signature here in question should be regarded as sufficient to indicate that the agent was acting ministerially only and without intent to bind himself personally. I Daniel, Negotiable Instruments (3d ed.), § 298; *Long v. Colburn*, 11 Mass. 97.

The authority of the agent to sign negotiable paper for his principal may be proved as in other cases of agency. Rem. & Bal. Code, § 3410. In view of the allegations of the complaint that Hicks was agent for the appellants, duly authorized to make the draft for them, the demurrer was properly overruled.

The appellants' principal contention is that Hicks as agent had no authority, either apparent or actual, to sign their name to or bind them by a bill of exchange. This presents the pivotal issue in the case. In considering this question, it will be necessary to discuss the evidence at some length.

The appellants were commission merchants, maintaining offices at Seattle and Tacoma, Washington, and at Vancouver, B. C. The evidence shows that Hicks was not engaged in buying and selling fruit on his own account, but exclusively in representing outside buyers in the California market. In the spring of 1910, a member of the defendants' firm, the appellant Campbell, called upon Hicks, who pro-

posed that he, for a salary, act as agent for the appellants in the purchase of fruit in southern California. Subsequently, in response to a telegraphic request from the appellants, Hicks put his offer in writing as follows:

"Los Angeles, Cal., March 15th, 1910.

"Ariss, Campbell & Gault, Seattle, Wash.

"Gentlemen: Your telegram of this date just received. The proposition I made to Mr. Campbell was that I make the same arrangement with you that now applies to the ten people on my letter head, and that is that you enter into a contract with me to pay me $50 per month for one year. In return for this I will represent you exclusively so far as your territory is concerned, on everything that you buy out of Southern California. I will solicit consignments, endeavor to secure you shippers' accounts, nurse any business arrangements which you may now have, inspect personally, or have a competent man inspect all cars bought for you; in short represent you as fully as if I were representing you alone in this territory, you to pay all telegrams both ways. You can readily understand that with the amount of business I control I am entitled to, and receive more consideration from the shippers than if I merely represented one concern, no matter how large that might be. In addition to the above I shall keep you posted from time to time as to conditions that exist here, and on request from you will gladly give you reliable information on any specific line which you may be interested in. I am sending you in this copy of a letter which I am just getting out to my members.

"I have had some correspondence with a mutual friend of ours in Seattle, J. H. Allen, Jr., and am convinced that I am making no mistake in entering into this arrangement with you, as he has nothing but nice words to say about you. I can refer you to all the people whom I represent, as to the value I have been to them.

"Under the terms outlined above, there would of course be no brokerage involved, and I would be perfectly unbiased, and as free to advise you not to buy, in case a deal did not look right, as I would to buy.

"I shall thank you if you will wire me immediately on your coming to a decision what that decision is.

"Very truly,    (Signed)  C. J. Hicks."

On March 26, 1910, the appellants in reply sent a telegram which, so far as material, was as follows:

"Will accept your proposition on six months trial if satisfactory will then make permanent arrangements."

This was confirmed on March 28 by the following letter:

"Seattle, U. S. A., March 28, 1910.
"C. J. Hicks, Los Angeles, Cal.

"Dear Sir: We wired you on Saturday that we will accept your proposition on a 6 months' trial and if satisfactory will then make permanent arrangement to quote us on oranges and lemons.

"We are not taking this up Mr. Hicks for 6 months to take advantage of the orange season but we appreciate the fact that it is necessary to have a man in Southern California and if everything is satisfactory the first six months we will be very glad to continue the arrangements; as we do not believe you would want to tie us up and everything not being satisfactory and we would not want to be tied up for a year.

"Keep us posted on all that is doing in the different districts.            Very truly yours,

"Ariss, Campbell & Gault."

These letters and telegrams constitute the original contract of employment. They seem plainly to authorize Hicks to make purchases on his own inspection. There is no implication that purchases made by him were to be subject to Seattle, Tacoma, or Vancouver inspection. Subsequent correspondence dispels any doubt that this is the correct interpretation of the agreement. By telegrams and letters from the plaintiffs to Hicks, after his employment and prior to the transaction here in question, it appeared that they, from time to time, instructed him to buy for "spot cash," carefully inspect the fruit, and add ten cents a box to the purchase price to cover their profit, in his telegram quoting prices, in order, as they explained, that customers might not suspect that any middle man was making a profit. There are a number of these letters in the record, but to conserve space we

quote but from one. On May 19, 1910, the appellants wrote Hicks, among other things, as follows:

"Kindly do the very best you can for us on these shipments as under the arrangements with you it would seem a difficult matter to get any adjustment, provided the purchases do not turn out satisfactory, whereas, by buying direct from the Vegetable Co. or Vegetable Union they always seem ready to meet their customer on any reasonable complaint. But where the cars are bought as with you, and paid for it is quite different and calls for extra vigilance and care on your part to see that these cars are absolutely all right in every respect before shipping out."

While the evidence shows that Hicks drew several drafts in his own name upon the defendants themselves to meet purchases of fruits and produce for them, it fails to show that he ever at any time drew a draft in his own name upon a customer of the defendants. He testified that he had, at various times, drawn drafts upon customers signed as the one here in question, "C. J. Hicks agent, Ariss, Campbell & Gault," but was unable to testify positively to more than one such draft. That was drawn on a Vancouver customer, and seems to have been paid by the customer. The management of the Seattle office claim never to have known of this instance. The telegram submitting the offer and authorizing the specific purchase upon which was issued the draft in suit were as follows:

"Los Angeles, Cal., July 13, 10.
"Ariss, Campbell & Gault, Seattle, Wn.

"Offer car Corona Extra Choice Lemons, Sierra Madre Ex. Choice Lemons free from scale, free from frost, latter part of this week; first of next week about 30-420's balance 300's-360's, $4.10 Altland pack. Answer quick.

"C. J. Hicks."

The appellants answered:

"Seattle, July 14, '10.
"C. J. Hicks, Exchange Bldg., Los Angeles, Cal.

"Answering your today's wire ship car Sierra Madre to Pacific Fruit & Produce Company, Tacoma, invoice and draw draft against them at four thirty-five the other ship us and can deduct profit on Tacoma car on our draft. We under-

stand this is good fruit think advisable ice cars. Confirm. Quote car fancy comb honey.     Ariss, Campbell & Gault."

Hicks thereupon drew the draft in question, deposited it in the respondent bank, checked against it to pay for the fruit, and sent a check to the appellants for the amount of their profit.

In view of the contract of employment, which, as we have seen, plainly contemplated purchases on inspection by Hicks alone, and in view of the course of dealing thereunder, as disclosed by the correspondence to which we have referred, which indicates that purchases were to be for "spot cash," these telegrams seem to us determinative of the issue under discussion. A purchase for "spot cash" on Hicks' own inspection of necessity required payment at the time. He, in making the purchase, would either have to draw his own draft or that of his principals. There was nothing in his contract of employment whereby he undertook to make advancements on these purchases for his principals. To assume that he was under any such duty would be unreasonable. He was not the seller, but only an agent for the purchasers. Their telegraphic instruction could have but one meaning. The specific direction to "draw draft" in payment for this car of fruit can only be construed as authorizing a draft in the appellants' name. The general rule contended for by the appellants, and amply supported by authority, that an agent employed to make purchases for his principal has no authority to bind his principal by a promissory note, bill of exchange, or other negotiable instrument, has no application where, as here, specific authority was conferred.

The appellants offered to prove the existence of a custom at Los Angeles, Seattle, and Tacoma, whereby the shipper would draw a draft signed by himself upon the consignee subject to inspection at the point of delivery by the consignee before payment. The refusal to admit this evidence is assigned as error. It was inadmissible for two reasons. In the first place, the custom, proof of which was offered

related to buyers and sellers and not to agents and principals. In the second place, as we have seen, the agent here was expressly authorized to purchase for "spot cash" upon his own inspection. No custom repugnant to this authorization was admissible to vary or control his authority. *Boardman v. Spooner,* 13 Allen 353.

Moreover, there was no evidence or offer of evidence that the respondent bank had any knowledge of the custom claimed. In the absence of such knowledge the custom would not be admissible in evidence against it.

"Particular usages and customs of trade or business must be known by the party to be affected by them or they will not be binding, unless they are so notorious, universal, and well established that his knowledge of them will be conclusively presumed." 12 Cyc. 1041, 1042.

In any view of the case, the evidence offered was properly excluded.

It is equally plain that the court did not err in excluding evidence offered as to the condition of the fruit when it arrived at Tacoma. Hicks was appellants' agent to inspect the fruit, purchase and pay for it. Whatever may be said of this evidence, if the appellants were seeking to hold Hicks for failure to properly inspect, it was plainly inadmissible as a defense to the draft in the hands of the bank.

The motion for a new trial was also properly overruled. The new evidence offered consisted of a letter from Hicks to the appellants which it appears was at all times in the possession of the appellants. No sufficient excuse is suggested for not producing it at the trial. We cannot consider it.

The competent evidence was all in writing; the questions presented involved the construction of these writings. The court was justified in taking the case from the jury and granting judgment for the respondent. The judgment is affirmed.

DUNBAR, C. J., MOUNT, FULLERTON, and MORRIS, JJ., concur.