## COMMERCIAL NATIONAL BANK OF GREAT FALLS, RESPONDENT, *v.* REICHELT, APPELLANT.

(No. 4,679.)

(Submitted January 30, 1922. Decided February 20, 1922.)

[204 Pac. 1037.]

*Promissory Notes—Corporations—Indorsement by Officer—Descriptio Personae—Rule Inapplicable Under Negotiable Instruments Law—Evidence—Harmless Error.*

Promissory Notes to Corporation—What Facts Admitted.
    1. By making a promissory note to a corporation, the maker admits the payee's corporate existence and its capacity to indorse. (Rev. Codes 1921, sec. 8467.)

Same—Signature of Party may be Made by Agent.
    2. Under section 8426, Revised Codes of 1921, the signature of any party to a negotiable instrument may be made by a duly authorized agent.

Same—Indorsement by President of Corporation—*Descriptio Personae*— Rule Inapplicable Under Negotiable Instruments Law.

3. *Held*, under section 8427, Revised Codes of 1921 that the indorsement, "J. H. Irwin, Presdt. Great Northern Surety Co.," on a note made payable to the company was its indorsement and not that of the individual signer, the contention that the words following the name were merely *descriptio personae* and did not indicate the character in which he acted not being maintainable under the Negotiable Instruments Law.

Same—Facts Established by Law — Evidence — Admissibility — Harmless Error.

4. Evidence of the facts that the president of a corporation signed a promissory note in its behalf, that the consideration for its transfer passed to, and that the indorsee dealt with, it and not with the individual signer, was immaterial but its admission harmless, since it established as facts that which the indorsement itself established as a matter of law.

*Appeals from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by the Commercial National Bank of Great Falls against Edward Reichelt. Judgment for plaintiff and defendant appeals from it and an order denying him a new trial. Affirmed.

*Messrs. Stranahan, Towner & Clark,* for Appellant, submitted a brief; *Mr. W. S. Towner* argued the cause orally.

The note was indorsed on the back thereof, "J. H. Irwin, Presdt. Great Northern Surety Co., Great Falls, Mont." This, we contend, was a sufficient irregularity to put the bank on notice, and therefore the bank could not become a holder in due course. The words quoted cannot be considered otherwise than as *"descriptio personae."* In many instances an indorsement of this character has been construed to make the indorser personally liable on the note. (*Rand etc.* v. *Hale*, 3 W. Va. 495, 100 Am. Dec. 761; *Pentz* v. *Stanton*, 10 Wend. (N. Y.) 271, 25 Am. Dec. 558; *Western Wheeled Scraper Co.* v. *McMillen*, 71 Neb. 686, 99 N. W. 512; *Lumley* v. *Kinsella Glass Co.*, 85 Ill. App. 412; *First Nat. Bank* v. *Kelgord*, 91 Neb. 178, 135 N. W. 548; 3 R. C. L. 1093.)

*Messrs. Peters & Smith,* for Respondent, submitted a brief; *Mr. Julius C. Peters* argued the cause orally.

The indorsement negatives personal liability. (*Gerber* v. *Stuart,* 1 Mont. 172; *Knippenberg* v. *Greenwood Min. etc. Co.,* 39 Mont. 11, 101 Pac. 159; *Falk* v. *Moebs,* 127 U. S. 597, 32 L. Ed. 266, 8 Sup. Ct. Rep. 1319 [see, also, Rose's U. S. Notes] ; *Gavazza* v. *Plummer,* 53 Wash. 14, 42 L. R. A. (n. s.) 1, 101 Pac. 370.)

The authority of the president of the company to make the indorsement is presumed. (*McGowan Commercial Co.* v. *Midland Coal & L. Co.,* 41 Mont. 211, 108 Pac. 655; *Jones* v. *Stoddart,* 8 Idaho, 210, 67 Pac. 650; 3 R. C. L. 1029, 1091; Jones on Evidence, sec. 65; 8 C. J. 521.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover upon a promissory note executed and delivered by the defendant to the Great Northern Surety Company of Great Falls, and indorsed and delivered to plaintiff before maturity for a valuable consideration. The indorsement is in the following form: "J. H. Irwin, Presdt. Great Northern Surety Co., Great Falls, Mont." It is conceded that the indorsement was made by Irwin, that he was president of the surety company, that he had authority to indorse the note for the company, and that plaintiff is a holder in due course, if the note bears the indorsement of the company, the holder at the time the transfer was made.

It is the contention of the defendant that, if Irwin intended to act in his representative capacity in making the indorsement, he failed of his purpose; that he bound himself personally, and did not bind his principal; that the added words, "Presdt. Great Northern Surety Co., Great Falls, Mont.," are merely *descriptio personae;* that the special defenses pleaded are therefore available; and that the district court erred in permitting Irwin to testify that he intended to bind the com-

pany, and not himself, and that the consideration for the transfer passed to the company, and not to himself.

The single question presented is: Does the note bear the indorsement of the Great Northern Surety Company? · The trial court answered in the affirmative, and found the issues for the plaintiff. Defendant has appealed from the judgment and from an order denying his motion for a new trial.

By making this note, the defendant admitted the existence [1, 2] of the Great Northern Surety Company and its capacity to indorse. (Sec. 60, N. I. L.; sec. 5908, Rev. Codes 1907; sec. 8467, Rev. Codes 1921.) The signature of any party to a negotiable instrument may be made by a duly authorized agent (sec. 19, N. I. L.; sec. 5867, Rev. Codes 1907; sec. 8426, Rev. Codes 1921), and it is axiomatic that a corporation can act only through an agent.

Prior to the enactment of the Negotiable Instruments Law [3] the authorities upon this subject were in hopeless confusion. Probably the majority of the courts would have answered the question here propounded in the negative, solely upon the theory that the added words are merely descriptive of Dr. Irwin, and do not indicate the character or capacity in which he acted. The rule that an appendix to the signature of a person is *descriptio personae* had its origin at a time when a man had but a single name, and it was necessary to individualize by employing some term to designate his occupation or rank, as, for instance, John, the miller, to distinguish him from John, the smith; but with a zeal worthy of a better cause the courts continued to invoke the rule when the reason for it had ceased, and when it was idle for John Miller to describe himself, in order that his signature might be distinguished from the signature of John Smith.

Typical of the decided cases invoking the rule just adverted to is *Burbank* v. *Posey,* 7 Bush (Ky.), 373. The instrument there involved was signed, "D. R. Burbank, Pres't of the Henderson Coal Co.," and it was held to impose individual liability, and not to bind the company. In *Reeve* v. *Bank,* 54

N. J. L. 208, 133 Am. St. Rep. 675, 16 L. R. A. 143, 23 Atl. 853, the note in question was signed, "Warrick Glass Works, J. Price Warrick, Prest.," and it was held to be the obligation of the Warrick Glass Works; but the court said that if the note had been signed "J. Price Warrick, President of the Warrick Glass Works," it would have been *prima facie* the individual obligation of J. Price Warrick.

Other courts, with a higher regard for general commercial usage, would have held the indorsement now under consideration to bind the company, and not Dr. Irwin. In *Slawson* v. *Loring,* 5 Allen (Mass.), 340, 81 Am. Dec. 750, there was involved a draft at the top of which were printed these words, "Office of Portage Lake Manufacturing Company," and the draft itself was signed, "I. R. Jackson, Agt." It was held to be the obligation of the company, and in disposing of the question the court, through Chief Justice Bigelow, said: "No one can doubt that on bills thus drawn the agent fully discloses his principal, and that the drawer could not be personally chargeable thereon."

In *Hitchcock* v. *Buchanan,* 105 U. S. 416, 26 L. Ed. 1078, the draft in question had printed upon the top of it the following: "Office of Belleville Nail Mill. Co."—and was signed: "Wm. C. Buchanan, Pres't. James C. Waugh, Sec'y." This was held to be the obligation of the company and not of the individual signers.

Still another group of courts held that in a signature of this character there is an ambiguity, and accordingly admitted evidence to show the intention of the agent, and this rule was adopted by the early territorial court of Montana (*Gerber* v. *Stuart,* 1 Mont. 172), and applied in *Knippenberg* v. *Greenwood M. & M. Co.,* 39 Mont. 11, 101 Pac. 159.

After reviewing the decisions to a much greater extent than is here attempted, Mechem in his work on Agency (section 443), says: "To extract general principles from these cases whose conflict is so great as to amount, in the language of a recent case, almost to anarchy, is manifestly difficult."

With this state of the law in mind, it is fair to presume that it was the purpose of the promoters of the Negotiable Instruments Law in drafting it, and likewise the purpose of the respective legislative assemblies in enacting it, to secure uniformity in the text, and, through that medium, uniformity in the construction by the courts, to the end that bills and notes— the currency of commerce—might pass through the channels of trade unembarrassed by any conflict of laws.

Upon the immediate subject under review, the Act speaks in no uncertain terms. Section 20 N. I. L. (sec. 5868, Rev. Codes 1907; sec. 8427, Rev. Codes, 1921) provides: "Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

Applying that rule to the instrument before us, there does not appear to be room for a difference of opinion upon the question presented. The note is payable to the Great Northern Surety Company, and Dr. Irwin added to his own signature words indicating that he signed for and on behalf of the company. The indorsement is *prima facie* the indorsement of the surety company and, in the absence of any evidence to the contrary, conclusive of plaintiff's right to recover. To adhere to the ancient dogma that the added words are merely *descriptio personae* defeats the manifest purpose of the law and renders the last clause of section 20 above superfluous, if not meaningless. The addition of this clause was rendered necessary, for the rule of undisclosed principal has never applied to negotiable instruments, and cannot be applied to them without impairing their value for the purpose of circulation.

In most of the cases decided since the Negotiable Instruments Law became effective, the courts have given to this section the construction indicated. In *Jump* v. *Sparling*, 218 Mass. 324, 105 N. E. 878, the note involved was signed: "J. H. Sparling,

Treas. Stratton Engine Co.  David F. Burns, Pres. Stratton Engine Co.''—and it was held that these signatures bound the engine company and not the individual signers.  To the same effect is *Adams* v. *Swig,* 234 Mass. 584, 125 N. E. 857. In *Bank* v. *Ariss,* 68 Wash. 448, 123 Pac. 593, the draft in question was signed, ''C. J. Hicks, Agent, Ariss, Campbell & Gault,'' and it was held to be the obligation of the firm and not the obligation of the agent who attached the signature.  In *Bank* v. *Jacobs,* 85 W. Va. 653, 102 S. E. 491, the note in question was signed, ''Winnie M. Jacobs, Exec. of Geo. M. Jacobs, deceased,'' and it was held to bind the estate and not the individual.  Other cases might be cited, but these suffice to indicate the general trend of judicial decisions since the Act became effective.  (Brannan on the Negotiable Instruments Law, p. 70.)  It is true that in a few states where the Act has been adopted the courts refuse to recognize that any change has been effected.  They seek only for an ancient precedent, and, having found it, follow it blindly, content to rely upon a legal fiction though false in fact.

Evidence was admitted upon the trial of this cause to show [4]   that Dr. Irwin indorsed the note for and on behalf of the surety company and did not intend to bind himself; that the consideration for the transfer passed to the company, and that plaintiff dealt with the company, and not with Irwin in his individual capacity.  We think the evidence was immaterial, but it could not work to the prejudice of the defendant, as its only effect was to establish as a fact that which the indorsement itself established as a matter of law.  If plaintiff sought to hold Dr. Irwin as an accommodation or irregular indorser, a different question would be presented, but upon this record, the right of plaintiff to recover against the maker cannot be questioned.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and GALEN concur.