ALPHONSE J. BOUCHARD *vs.* FIRST PEOPLE'S TRUST.

Suffolk.     March 6, 1925. — September 24, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Voluntary Association.     Trust,* What constitutes.     *Statute,* Construction.

There is a sound and well recognized distinction between a voluntary association and an express trust even though both are established by written instruments or declarations of trust, managed by trustees, and in both the beneficial interest is divided into and represented by transferable certificates or shares: a voluntary association established by a written instrument imports some element of association and coöperation among the beneficiaries, while an express trust may exist without it.

An express trust "under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares," is not an association of the character described in G. L. c. 182, §§ 1, 6, if the shareholders are unassociated, have no organization, and each has merely an equitable interest in the trust without any legal power or voice, direct or remote, in the management of the trust or the choice or conduct of the trustees; and therefore it cannot be sued as an entity under that statute.

CONTRACT for $2,185.30, money had and received by the defendant to the plaintiff's use.     Writ dated July 30, 1923.

In the writ, the defendant was described as "a voluntary association under a written instrument or a declaration of trust, duly created under the laws of the Commonwealth."

The action was heard in the Superior Court by *Morton,* J., without a jury, upon an agreed statement of facts.     Material facts agreed upon are described in the opinion.

The defendant asked the judge to rule that upon the agreed facts it was not a voluntary association within the meaning of G. L. c. 182, § 6, and that the action could not be maintained against it.     At the request of the parties, the judge reported the case for determination by this court, without decision by the judge, it being agreed that, if the defendant's request for a ruling ought not to have been granted, judgment was to be entered for the plaintiff in the sum of $300, and if that request ought to have been granted, the plaintiff was to be permitted to apply to the Superior

Court to amend his writ by substituting for the First People's Trust as party defendant the present trustees thereof.

*R. H. Cahouet*, for the plaintiff, submitted a brief.

*W. H. Hitchcock*, for the defendant.

RUGG, C.J. The single question here presented is whether the action can be maintained against the defendant as a "voluntary association" under G. L. c. 182, § 6.

The facts respecting the First People's Trust are agreed. It was formed by the execution of a declaration of trust dated October 28, 1919. That declaration was signed by five individuals named therein as trustees and by no others. It is somewhat voluminous, but so far as material to the present litigation may be briefly summarized. The number of trustees may be increased or diminished by majority vote of the trustees in office, but never can exceed fifteen nor be permanently less than five. The purpose of the trust is "to undertake and carry on anywhere any business, transaction or operation which an individual could legally undertake or carry on conformably to the law of the land where the business transaction or operation is undertaken and carried on." This is followed by an enumeration of a great variety of kinds of business in which the trustees may engage, accompanied by the specific statement that the object of the trust and the power of the trustees is not to be in any way limited thereby. The trustees are given broad powers to acquire, buy, sell and otherwise deal with property of the trust to the same extent as if they were absolute owners. They are to hold the property "in fee simple and not as tenants in common." Vacancies in the trustees arising from any cause are to be filled by majority vote of the trustees then in office. Any trustee may be removed by unanimous action of all the remaining trustees. The trustees are not entitled as such to share in profits or in distribution of principal, "and shall not be liable for losses, and shall not be partners of each other or in association with each other." The capital of the trust is divided into shares of three different classes carrying diverse rights as to division of profits and in liquidation of assets. Certificates are to be issued to shareholders, transferable on the books of the trustees when properly indorsed.

The owners of shares are called "*cestuis que trust* or benefici-
aries." They are declared to be "trust beneficiaries only and
to the extent" defined in the instrument and "not partners
or associates or in any other relation whatever between
themselves with respect to the trust property." They have
no legal interest in the trust assets, have no share in profits
as such and are not liable for losses. There is no provision
for the holding of any meeting of the shareholders or the
performance of any act whatsoever concerning the manage-
ment, continuance or termination of the trust or its property
or the trustees. Their only legal rights are to receive such
dividends as may be declared and to share in any partial or
final distribution of the assets of the trust according to the
preferences established with respect to the several classes
of stock, all in accordance with the discretion of the trustees.
The declaration of trust may be amended by the unanimous
action of the trustees by complying with prescribed forms,
one of which is that such amendment shall take effect thirty
days after notice in writing shall have been mailed to each
shareholder. The shareholders, however, have no power
whatever respecting such amendment. They are merely en-
titled to receive a copy of it. The amendments are initiated
and become effective solely through action of the trustees,
without the intervention of other instrumentality. The
acceptance of certificates of shares issued under the decla-
ration of trust constitutes the certificate holders parties to
that declaration and agreement with the same force and
effect as if they had signed and sealed the same. The trust
is to end twenty years after the death of described individ-
uals, or earlier upon vote of the trustees.

At the execution of the declaration of trust no shares had
been sold and no property was held under it. Thereafter
shares were offered for sale and a large number sold, mostly
upon the instalment plan. As these were paid for in full,
certificates for the number and class of shares were issued to
the subscribers in accordance with the declaration of trust.
At the date of the writ there were approximately eighty-five
hundred holders of full paid shares, whose residences were
widely scattered through southern New England and the

middle Atlantic States, and some in more distant States and countries. There were also a large number of persons who had not completed their subscriptions and who therefore were not shareholders. The only acts of the certificate holders aside from acquiring the certificates have been to receive their dividends as paid. They have not jointly, individually or in groups attempted to exercise any control over the trustees or the affairs of the trust.

There were outstanding twenty-nine thousand, nine hundred and fifty-one first preferred shares of a par value of $1,497,550, twenty-nine thousand, nine hundred and fifty-one second preferred shares of a par value of $1,497,550, representing cash paid to the trustees for the full par value. There were also thirty-nine thousand, nine hundred and fifty-one common shares, then of a par value of $50, each since changed to no par value. Thus about $3,000,000 have been paid to the trustees for fully paid shares. In addition they have had other funds from uncompleted contracts and other sources. The trustees own in the aggregate a comparatively insignificant number of shares.

The funds of the trust have been employed in making loans secured by mortgages on real estate, and by pledges of personal property as collateral, and in purchasing book accounts, stocks, bonds, notes and conditional sale contracts, and in buying one modern eleven-story office building. An office with a staff of employees is maintained in Boston, where the business of the trust is conducted.

It is provided by G. L. c. 182, § 6, that "An association may be sued in an action at law for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees, or by any duly authorized officer of the association, in the performance of their respective duties under such written instruments or declarations of trust, and for any damages to persons or property resulting from the negligence of such trustees, agents or officers acting in the performance of their respective duties, and its property shall be subject to attachment and execution in like manner as if it were a corporation, and service of process upon one of the trustees shall be sufficient."

In § 1 of the same chapter "Association" is defined as "a voluntary association under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares."

Confessedly the First People's Trust is established under a written declaration of trust and the entire beneficial interest in it is divided into transferable shares. Therefore the precise point to be decided is whether the First People's Trust is an "association" within the meaning of that word in the two sections of the statute just quoted. This court has never been required to decide that point. Numerous cases have arisen with respect to the nature of declarations of trust and the rights and responsibilities of the shareholders thereunder. Commonly the inquiry has been to determine whether the particular method of organization or establishment constituted the shareholders partners or pure beneficiaries under a trust. All our relevant decisions rendered prior thereto were reviewed with acute thoroughness by Mr. Justice Loring in *Williams* v. *Milton,* 215 Mass. 1, and in *Dana* v. *Treasurer & Receiver General,* 227 Mass. 562. See also *Flint* v. *Codman,* 247 Mass. 463, 469, and cases there collected, and *Baker* v. *Commissioner of Corporations & Taxation, ante,* 130. That inquiry is not pertinent to the present issue, although it is plain that the declaration of trust here under consideration established a trust and not a partnership.

Examination of the history of G. L. c. 182 shows that it is made up in the main from three antecedent enactments, two of which were preceded by studies undertaken at the behest of the General Court. The first statute was St. 1909, c. 441. That was confined to voluntary associations and made use of no other descriptive term. That act is embodied now in G. L. c. 182, §§ 2, 4. Pursuant to Res. 1911, c. 55, the tax commissioner made an investigation of voluntary associations organized or doing business under written instruments or declarations of trust. The only importance of his report (1912 House Documents No. 1646) in this connection is that he clearly recognizes the existence both of voluntary associations and of express trusts as different and distinct entities, each with shares representing

the beneficial interest in its assets. This appears not only from the conclusions of the main report but in the draft of three out of the five proposed statutes annexed thereto as appendices, where the distinction between voluntary association and express trust is recognized. No immediate legislative action appears to have been taken on these parts of that report. But by Res. 1912, c. 113, provision was made for a special commission to investigate "voluntary associations." The report of that commission (1913 House Documents No. 1788) presented drafts of five proposed statutes. In two of these "voluntary association" or "association" alone occurs. In one the distinction between "voluntary association" and "express trust" is recognized by the mention of each. That one somewhat changed was enacted as St. 1913, c. 509. That statute in § 1 makes specific provision respecting "the trustees of any voluntary association or express trust under a written instrument or declaration of trust the beneficial interest whereof is divided into transferable certificates of participation or shares." Thus voluntary association and express trust are recognized as distinct subjects for regulation. Reference to voluntary association and express trust as different occurs also in §§ 2, 3, 4 and 5. The two are treated as distinct by separate mention in St. 1914, c. 742, §§ 150, 151, 152. These several enactments with two others not here relevant were embodied in G. L. c. 182. The first seven sections of that chapter relate solely to an association. In § 8, however, the department is given authority to examine the books and other records of "any partnership, express trust, voluntary association or corporation." In § 9, "a partnership or corporation or the trustees of an express trust or voluntary association," who refuse to submit books and records to examination, are subjected to a penalty. Thus, in these two sections the distinction between "voluntary association" and "express trust" is preserved, continued and maintained. While the words of the earlier enactment, St. 1913, c. 509, § 1, respecting "express trust" do not appear in § 7 of G. L. c. 182, as perhaps might have been expected, that does not impair the force of their presence in the two following sections.

It is a familiar canon of statutory interpretation that every word of a legislative enactment is to be given force and effect so far as reasonably practicable. No part is to be brushed aside as immaterial or superfluous unless no other rational course is open. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 530. It cannot be thought that the legislative use of these two distinct descriptions, "voluntary association" and "express trust" in said §§ 8 and 9, was accidental or meaningless.

There is a sound and well recognized distinction between a voluntary association and an express trust even though both are established by written instruments or declarations of trust, managed by trustees, and the beneficial interest whereof is divided into and represented by transferable certificates or shares. That distinction has been drawn expressly or inferentially in numerous decisions. With reference to associates of the incorporators of a bank, these words were used by Chief Justice Shaw in *Lechmere Bank* v. *Boynton,* 11 Cush. 369, 380: "Association *ex vi termini* implies agreement, compact, union of mind, and purpose and action." Touching the meaning of "association" in the statute now embodied in G. L. c. 110, § 8, as to adoption of trademarks, it was said by Chief Justice Holmes in *Commonwealth* v. *Rozen,* 176 Mass. 129, 131: . . . "we may extend the word 'association' to include associations without as well as with officers." In *Hecht* v. *Malley,* 265 U. S. 144, 157, this is said: "The word 'association' . . . has been defined as a term 'used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.' 1 Abb. Law Dict. 101 (1879); 1 Bouv. Law Dict. (Rawle's 3rd Rev.) 269; 3 Am. & Eng. Enc. Law (2d ed.) 162; and *Allen* v. *Stevens* (App. Div.), 54 N. Y. S. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are: 'In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation.'

Webst. New Internat. Dict. '[U. S.] An organized but unchartered body analogous to but distinguished from a corporation.' Pract. Stand. Dict. And see *Malley* v. *Bowditch* (C.C.A.), 259 Fed. 809, 812; *Chicago Title Co.* v. *Smietanka* (D. C.) 275 Fed. 60: also *United Mine Workers* v. *Coronado Co.*, 259 U. S. 344, 392, in which unincorporated labor unions were held to be 'associations' within the meaning of the Anti-Trust Law."

In *Williams* v. *Milton*, 215 Mass. 1, an express trust with shares was under examination. It there was said at pages 10 and 11: "The certificate holders . . . are in no way associated together, nor is there any provision in the indenture of trust for any meeting to be held by them. The only act which (under the trust indenture) they can do is to consent to an alteration or amendment of the trust . . . or to a termination of it before the time fixed in the deed. But they cannot force the trustees to make such alteration, amendment or termination. . . . And the giving or withholding of consent by the *cestuis que trust* is not to be had in a meeting, but is to be given by them individually. . . . The certificate holders . . . have a common interest in precisely the same sense that the members of a class of life tenants (among whom the income of a trust fund is to be distributed) have a common interest, but they are not *socii*, . . . . The sole right of the *cestuis que trust* is to have the property administered in their interest by the trustees, who are the masters, to receive income while the trust lasts, and their share of the corpus when the trust comes to an end." Earlier in the same opinion it was said at page 8: "The difference between *Hoadley* v. *County Commissioners*, 105 Mass. 519 (involving the same indenture as that in *Gleason* v. *McKay*, 134 Mass. 419), *Whitman* v. *Porter*, 107 Mass. 522, *Phillips* v. *Blatchford*, 137 Mass. 510, *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346, and *Williams* v. *Boston*, 208 Mass. 497, on the one hand, and *Mayo* v. *Moritz*, 151 Mass. 481, on the other hand, lies in the fact that in the former cases the certificate holders are associated together by the terms of the 'trust' and are the principals whose instructions are to be obeyed by their agent who for their convenience holds the

legal title to their property. The property is their property. They are the masters. While in *Mayo* v. *Moritz* on the other hand there is no association between the certificate holders. The property is the property of the trustees and the trustees are the masters. All that the certificate holders in *Mayo* v. *Moritz* had was a right to have the property managed by the trustees for their benefit. They had no right to manage it themselves nor to instruct the trustees how to manage it for them. . . . there was no association among the certificate holders just as there is no association although a common interest among the life tenants or the remaindermen in an ordinary trust." In *Dana* v. *Treasurer & Receiver General,* 227 Mass. 562, it was said at page 572, respecting a trust agreement without transferable certificates, where the beneficiaries could not exercise any legal control over the administration of the trust but had all signed the trust instrument: "The owners of the beneficial interest had a common interest but they were not associated together in any way." In *Eliot* v. *Freeman,* 220 U. S. 178, two trusts were before the court, in each of which the trustees held the title to the property and transferable certificates representing the beneficial interest were issued to shareholders, who held meetings either at stated intervals or on call and who in each trust had more or less power of concerted action. It was said in the opinion, page 186, "A trust of the character of those here involved can hardly be said to be organized, within the ordinary meaning of that term." In *Crocker* v. *Malley,* 249 U. S. 223, a trust was before the court, established under a written instrument with beneficial interest represented by transferable certificates issued to *cestuis que trust* who had power, to be expressed by written consent, to increase the compensation of the trustees, to fill vacancies among the trustees, and to modify the terms of the trust, but who had no other control. In the opinion by Mr. Justice Holmes, after quoting from *Williams* v. *Milton,* 215 Mass. 1, 8, 10, 11, the statement, that "The certificate holders . . . are in no way associated together, nor is there any provision . . . for any meeting to be held by them," with some of its context, it was held at pages 233, 234:

'The trust that has been described would not fall under any familiar conception of a joint-stock association, whether formed under a statute or not. *Smith* v. *Anderson*, 15 Ch. Div. 247, 273, 274, 277, 282. *Eliot* v. *Freeman*, 220 U. S. 178, 186. . . . it would be a wide departure from normal usage to call the beneficiaries here a joint-stock association when they are admitted not to be partners in any sense, and when they have no joint action or interest and no control over the fund. On the other hand, the trustees by themselves cannot be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such, . . . We perceive no ground for grouping the two — beneficiaries and trustees'—.together, in order to turn them into an association, by uniting their contrasted functions and powers, although they are in no proper sense associated. It seems to be an unnatural perversion of a well-known institution of the law.''

While express trusts and voluntary associations established by written instruments may in many instances run into each other and have factors in common, the former may exist without any element of association between the beneficiaries, and the latter imports some element of coöperation.

It seems plain to us that there is no association, in the sense in which that word is commonly used, among the shareholders of the First People's Trust. Each of them has simply a property interest in a fund held for their common benefit. The arrangement established by the declaration of trust involves a total want of legal power by the shareholders as to the trust. They have no voice direct or remote in its management. They cannot exercise the slightest control over the selection or conduct of the trustees. No question as to its execution can be ever submitted to them for approval or even for advice. Each shareholder by subscribing for a certificate, which is by individual choice and not by joint action, surrenders to those, who are and from time to time become trustees by the self-perpetuating selection of the trustees for the time being, all legal power over the money paid for the subscription. The shareholders are unassociated; they have no organization; each of them has simply

an equitable interest in the trust.   The various definitions of the word "association" all imply, if they do not require, as an essential element, that there be some form of organization resembling modes of procedure inherent in incorporated bodies.   A business corporation is unthinkable where the shareholders are devoid of legal rights, have no officers and are and must remain forever dumb as to the selection, approval or disapproval of managers and methods of conduct of corporate affairs.

The declaration of trust in the case at bar is different from any hitherto considered by this court, in that the shareholders are utterly destitute of every legal right and of every means of expressing an opinion touching the trust.   No avenue of action occurs to us as open to them except a court of equity for the enforcement of whatever rights may be cognizable in a court of equity.   In this respect it bears resemblance to *Mayo* v. *Moritz*, 151 Mass. 481.   It is distinguishable from the trusts involved in *Hecht* v. *Malley*, 265 U. S. 144, where reference is made at page 161 to "the large measure of control exercised by the beneficiaries" of those trusts, although no reliance seems to have been placed upon that factor.   But, however that may be, we are here interpreting a statute of this Commonwealth.

The trustees can hardly be termed an association.   They have no personal or beneficial interest in the corpus of the trust.   They are a part of an entire scheme established by the declaration of trust.   To call such trustees an association would involve an extension of the meaning of that word to include persons who act jointly for many purposes quite remote from resemblance to the present trustees. What is said in *Crocker* v. *Malley*, 249 U. S. at page 234, and already quoted, seems to dispose of this contention.

In the light of what has been said in our own decisions, in view of the history of the governing statute, and having due regard to the correct meaning of words, we do not see our way clear to hold that this is an association.   If it had been the purpose of the Legislature to include express trust where there is no association among the shareholders, it would have been simple to say so.   Apt statutory words to

effectuate that purpose were available in drafts submitted to the General Court. Where that purpose existed, the expression was made plain as it is in G. L. c. 182, §§ 8, 9.

It may be that, if a case like the present had been before the minds of the legislators, statutory words broad enough to include it would have been used. But we cannot be sure that the omission was accidental and not intentional. In any event, we can only interpret the statute as enacted without infringing upon the prerogative of the legislative department of government by adding words not used by it. *See* v. *Building Commissioner of Springfield,* 246 Mass. 340, 343. *Arruda* v. *Director General of Railroads,* 251 Mass. 255, 263.

The result is that the "First Peoples Trust" is not an "association" within the meaning of G. L. c. 182, § 6, and the request for a ruling to that effect ought to have been granted. *Pickett* v. *Walsh,* 192 Mass. 572, 589, 590. *Hanley* v. *American Railway Express Co.* 244 Mass. 248, 250. *Donovan* v. *Danielson,* 244 Mass. 432, 437. In accordance with the terms of the report the plaintiff is to be permitted to apply to the Superior Court to amend his writ by substituting as parties defendant the present trustees.

*So ordered.*