## GUTELIUS v. STANBON et al.
### No. 3430.

District Court, D. Massachusetts.
Dec. 5, 1929.

On Rehearing March 25, 1930.

622

Phipps, Durgin & Cook and Marvin C. Taylor, all of Boston, Mass., for plaintiff.

Henry R. Mayo and James E. Connor, both of Lynn, Mass., for Sagamore Trust Co.

Edward S. Underwood, of Lynn, Mass., for Security Trust Co.

BREWSTER, District Judge.

This is an action of contract brought by the receiver of the Farmers' Bank & Trust Company, a Florida banking corporation, against three defendants in their individual capacity, who were trustees of the Stanbon, Nye & Hill Realty Trust.

The case was tried without a jury; the parties having duly stipulated to waive jury trial. The facts are not in dispute. The question presented is largely a question of law arising on the following statement of facts:

The Stanbon, Nye & Hill Realty Trust is a voluntary association existing by virtue of a certain written declaration of trust, dated June 14, 1918. The beneficial interest of the trust is divided into negotiable shares. The declaration of trust was made with reference to certain real estate situated in Massachusetts conveyed to the then trustees, but by the terms of the trust the trustees were empowered to "acquire by purchase or exchange, such real and personal property as shall be deemed by the Trustees for the best interests of the shareholders and for the best interests of the business carried on by the Realty Trust. The property, so acquired to be held by the Trustees under the same trusts" as those set forth in the declaration of trust.

On or about the 16th day of October, 1925, the defendants, who were then the duly constituted trustees of the trust, acquired by purchase certain lots of land in West Palm Beach, Fla., and on that date executed and delivered a purchase-money mortgage to secure four certain promissory notes, each for $2,187.50. The notes were all payable to the order of L. A. Winget at the Farmers' Bank & Trust Company, West Palm Beach, Fla., and were signed in the following manner:

"Harry Stanbon
"William M. Nye
"Walter H. Hill

"Trustees of the Stanbon, Nye & Hill Realty Trust."

The original declaration of trust was recorded in the registry of deeds for the county of Essex, Southern District, June 25, 1918. This was the only recording of the original instrument in Massachusetts.

On January 30, 1926, the declaration of trust, with certain amendments and records of the trust, were filed for record in the office of the clerk of the circuit court of the Fifteenth judicial circuit of Florida in and for Palm Beach county, and on February 1, 1926, were duly recorded.

Two of the promissory notes, above described, one maturing October 16, 1926, and the other maturing October 16, 1927, were duly indorsed in blank and pledged with the Farmers' Bank & Trust Company as collateral to secure certain obligations of one McWilliams. It was agreed that the bank became the holder in due course of these notes, and that the balance due the bank is in excess of the amounts due thereon. It was also agreed that the receiver was duly appointed and qualified, and that the defendants were the duly elected trustees of the realty trust.

The receiver has brought two actions upon these notes, one against the realty trust and the other against the three trustees in their individual capacity, alleging that they are liable jointly and severally as individual makers thereof.

It is conceded that as to the suit against the realty trust there is no defense, but the defendants in the above-entitled suit deny that any personal liability attaches to them by reason of the making of the notes upon which this suit is predicated.

The single question, therefore, presented for consideration is whether these defendants became personally liable by signing and delivering the two promissory notes in the manner above indicated.

The parties concede that, inasmuch as the notes were mailed to Florida and were payable there, the contracts are Florida contracts, and the rights and obligations of the parties are to be determined according to the laws of that state.

We are concerned with obligations issued by the trustees of a voluntary association created as a common-law trust, the terms and provisions of which are similar in purport to many realty trusts organized for the purpose of carrying on business, and found frequently employed in this commonwealth.

As I view the case, it does not turn upon the question whether the shareholders or cestui que trustent are liable as copartners. The relationship with which we have here to deal is that of principal and agent. The Florida courts recognize this relationship in Willey v. Hoggson Corp., 90 Fla. 343, 106 So. 408, 411.

The liability of the defendants, therefore, as trustees must be determined with reference to section 20 of the Negotiable Instruments Law (Compiled General Laws of Florida, 1927, section 6780), which became law in Florida on June 1, 1897. This section reads as follows:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal does not exempt him from personal liability."

This statute apparently re-enacts the established rule of the common law applicable to contracts of agents made on behalf of a disclosed principal. It had been universally held, in the federal courts at least, that an instrument bearing on its face all the signs of being the contract of the principal could not be held to bind the agent personally. Hitchcock v. Buchanan, 105 U. S. 416, 26 L. Ed. 1078; Post v. Pearson, 108 U. S. 418, 2 S. Ct. 799, 27 L. Ed. 774; Falk v. Moebs, 127 U. S. 597, 8 S. Ct. 1319, 32 L. Ed. 266.

In the case at bar, the defendants added to their signatures words indicating that they signed in their representative capacity for and on behalf of a principal which was disclosed; namely, the Stanbon, Nye & Hill Realty Trust. That this section of the Negotiable Instruments Law applies to an obligation executed by trustees of a realty trust was held in Adams v. Swig, 234 Mass. 584, 125 N. E. 857.

No decision of the Florida courts has been cited, nor do I find any that deals with the application of this statute to obligations of a realty trust. In the absence of any controlling decision of the Florida courts to the contrary, this court would be entirely warranted in following the highest court of Massachusetts when it is fully convinced of the soundness of the law as laid down by that court.

It is argued by the plaintiff that the form of the signature operates to fix upon the defendants personal liability. It is true that, prior to the enactment of the section of the Negotiable Instruments Law, above cited, there were in some jurisdictions adjudications to the effect that, if the signature were followed by a description of the principal, the words of the description were merely descriptio personæ, and therefore to be treated as surplusage, leaving the agents as the only parties liable on the note. One of the effects of these provisions of the Negotiable Instruments Act was to abrogate this rule of law in those states that have adopted the act. Jump v. Sparling, 218 Mass. 324, 105 N. E. 878; Citizens' National Bank v. Ariss, 68 Wash. 448, 123 P. 593; Chatham National Bank v. Gardner, 31 Pa. Super. Ct. 135.

In the absence of any controlling authorities of the Florida court, I am prepared to adopt this interpretation of the act for the purposes of the case at bar.

It remains to be considered whether the defendants who signed in a representative capacity were duly authorized. By the terms of the declaration of trust, under which the defendants were acting, they were empowered to mortgage the trust property, which necessarily carried with it the power to sign and deliver the obligations of the company to secure which the mortgage was given.

All the Florida cases cited by the plaintiff in support of the proposition that one who acts in a fiduciary capacity, such as executor or trustee, becomes personally liable on obligations entered into by such executor or trustee, rest upon the obvious want of authority in such executor or trustee to bind the estate of the decedent or his beneficiary, and such cases, therefore, are not relevant to the questions here presented. Moreover, these cases were decided prior to the adoption of the Negotiable Instruments Act in that state.

Nor can I accept the plaintiff's suggestion that the failure to record the trust in-

strument with the city clerk of Lynn, as required by the laws of Massachusetts, or to record it in Florida, as required by chapter 9125 of Acts of 1923 of the state of Florida, operates to deprive the defendants of the power expressly conferred upon them by the terms of the trust. I find and rule, therefore, that the defendants signed in their representative capacity with full authority so to do.

■ In the view I have taken of the matter, it is unnecessary to determine whether the plaintiff, as holder in due course of the note, is bound by the provisions of the declaration of trust exempting the trustees from personal liability. The statute effectually does that if they add to their signatures words indicating that they sign in a representative capacity, disclose their principal, and are duly authorized. Respecting the obligations upon which this cause of action is predicated, the defendants have added to their signatures words indicating that they signed in a representative capacity. They disclosed their principal, and they were duly authorized. Therefore they are not liable on the instruments, and judgment should be entered for the defendant.

### On Rehearing.

In my opinion in this case, filed December 5, 1929, I stated that the case did not turn upon the question whether the shareholders or cestui que trustent were liable as copartners. This statement has been challenged by the plaintiff's attorney, who points out that in the third and fourth counts of his declaration the plaintiff intended to declare upon the notes as obligations of a voluntary association possessing all the legal characteristics of a partnership, and that the defendants were therefore individually liable on the obligation.

I am still of the opinion that, if it were the plaintiff's intention so to declare, the allegations of the counts fall short of so doing. There is no allegation that the defendants are shareholders. It is alleged that, under the laws of the state of Florida, the trustees and all shareholders are liable jointly and severally as partners on the obligations of the trust. I cannot agree that the liability of the defendants as shareholders would be determined by the laws of Florida, nor can I subscribe to the proposition that, even under the laws of Massachusetts, the trustees and shareholders are jointly and severally liable.

These shortcomings, however, can readily be overcome by amendment, and, assuming that the defects are thus cured, I have elected to proceed to the consideration of the question which was argued at the rehearing; namely, whether the declaration of trust created a trust or a partnership.

For the purposes of the case, I assume it to be true that the defendants named are shareholders in the trust. In the Massachusetts cases bearing upon this question, a good criterion may be found in Williams v. Milton, 215 Mass. 1, 8, 102 N. E. 355, 357, where Mr. Justice Loring says:

"The difference between Hoadley v. County Commissioners, 105 Mass. 519 * * * [other cases cited] * * * on the one hand, and Mayo v. Moritz, 151 Mass. 481, 24 N. E. 1083, on the other hand, lies in the fact that in the former cases the certificate holders are associated together by the terms of the 'trust' and are the principals whose instructions are to be obeyed by their agent who for their convenience holds the legal title to their property, the property is their property, they are the masters; while in Mayo v. Moritz, on the other hand, there is no association between the certificate holders, the property is the property of the trustees and the trustees are the masters. All that the certificate holders in Mayo v. Moritz had was a right to have the property managed by the trustees for their benefit. *They had no right to manage it themselves nor to instruct the trustees* how to manage it for them."

Applying this test to the declaration of trust creating the Stanbon, Hill & Nye Realty Trust, we find that by its terms it is expressly provided that the shareholders shall have no interest in the trust property itself, real or personal, held from time to time by the trustees, nor shall they have any right to call for any partition or division thereof except upon termination of the trust. "No shareholder shall make any contract, receive any money or transact any business in behalf of said Realty Trust, all of which things shall be done by said trustees" as thereinafter provided.

It is further provided that the trustees shall have "exclusive control and management of said trust estate." There are also the usual provisions found in such declarations of trust limiting the powers of the trustees to bind the shareholders personally. Paragraph 8 of the declaration of trust reads as follows:

"8. The trustee shall have no power to bind the shareholders personally and in every written contract entered into by the trustees, reference shall be made to this declaration of trust, and any person dealing or

contracting with said trustees shall look only to the property held in said trust for payment of any debts, damages judgment or decree which may become due or payable by reason of the acts or failure to act of said trustees, and neither the trustees nor the shareholders of the Realty Trust, present or future, shall be personally liable therefor."

There are provisions for annual meetings of the shareholders, at which trustees may be elected by a majority vote, and the shareholders may by the same vote terminate the trust at any time. But the shareholders have no right to remove trustees or to amend the terms of the declaration of trust. In this important respect the instrument differs from that considered in Neville v. Gifford, 242 Mass. 124, 136 N. E. 160.

The provisions of the trust relating to the power of the shareholders to elect trustees and to terminate the trust are the only provisions that confer upon the shareholders any rights other than to receive their share of the profits, and, in the case of liquidation, their share of the trust property.

It is my opinion that this is not enough to bring this declaration of trust within that class of cases of which Hoadley v. County Commissioners, supra, and Frost v. Thompson, 219 Mass. 360, 106 N. E. 1009, are illustrations; rather, it falls within the class of cases such as Mayo v. Moritz, supra, and Bouchard v. First People's Trust, 253 Mass. 351, 148 N. E. 895.

While it is true that the shareholders may determine the number of trustees and elect additional trustees or fill vacancies, as they have sometimes done at meetings, I do not think this is enough to control the express provisions of the trust that the shareholders shall have no interest in the trust property and that the exclusive control and management of the trust estate shall reside in the trustees.

I rule, therefore, that the declaration of trust of Stanbon, Hill & Nye Realty Trust created a trust rather than a partnership.

I have already decided, in my earlier opinion, which I have no desire to modify, that, in executing on behalf of the trust the promissory notes declared upon, the trustees did not become personally liable, and now, since the enactment of the amendment of 1926 (Acts & Resolves, 1926, c. 290, § 5), a trust, as well as an association, may be sued for its obligations contracted or incurred by the trustees. Such a suit (Law No. 3429) is now pending, brought by this same plaintiff.

In that suit I have already ordered judgment in his favor.

It follows that in the above-entitled case judgment should be entered for the defendants, and my previous order to that effect stands.